A98A2265. TOWNSEND v. THE STATE.
(511 SE2d 587)

JOHNSON, Chief Judge.

Russell W. Townsend was charged with following too closely, driving under the influence of alcohol to the extent that it was less safe for him to do so, and driving with an unlawful alcohol concentration in his blood. At trial, the court granted Townsend's motion for a directed verdict of acquittal as to the charge of following too closely. During its deliberation, the jury deadlocked on the issue of whether Townsend was guilty of driving under the influence of alcohol, but convicted him of driving with an unlawful alcohol concentration in his blood, a violation of OCGA § 40-6-391 (a) (1), (4). Townsend appeals from the judgment of conviction entered upon the jury's verdict. For the reasons which follow, we affirm.

On October 5, 1995, the pickup truck Townsend was driving struck a disabled car in the far right-hand lane of I-285 in DeKalb County. There was no emergency lane available to the operator of the disabled vehicle along that section of interstate highway. When the investigating officer approached Townsend's truck, Townsend was lying across the front seat. He smelled strongly of alcohol, was moaning in pain, and his face was cut and bloody. Townsend did not respond when the investigating police officer asked if he was injured. Medical technicians arrived and took Townsend to the hospital. The officer proceeded to the hospital after he had secured the scene so that the two damaged vehicles could be safely towed away. Only after Townsend received medical treatment was the officer able to question him. Townsend's breath still smelled strongly of alcohol, and the officer read Townsend an implied consent warning from a card which the officer carried. Townsend agreed to submit to a chemical test of his blood. His blood was drawn by a certified phlebotomist. A forensic chemist at the State Crime Lab analyzed Townsend's blood using head space gas chromatography. Townsend's blood tested positive for ethyl alcohol at a concentration level of ".20 grams percent."

1. Townsend claims the trial court erred in denying his motion in

limine to suppress the results of the chemical blood test. Townsend asserts that he was induced to submit to the test because the police read him an untimely and inaccurate implied consent warning.

(a) Pretermitting the issue of whether the officer failed to accurately recite the implied consent warning and, if so, whether any misstatements made rendered the warning invalid is the question of whether Townsend preserved this issue for appeal. See *Harrison v. State*, 235 Ga. App. 78 (508 SE2d 459) (1998), and *State v. Nolen*, 234 Ga. App. 291 (508 SE2d 733) (1998) (physical precedent only). At the motion hearing, Townsend raised an issue as to the timeliness of the implied consent warning. He reserved all other objections as to the warning. However, at trial, Townsend did not raise any issue as to the inaccuracy of the implied consent warning. As this specific issue was not raised before the trial court, it is not preserved on appeal. See *Simms v. State*, 223 Ga. App. 330, 332 (1) (477 SE2d 628) (1996).

(b) We find Townsend's contention that the implied consent warning was untimely to be without merit.

As a general rule, the implied consent warning must be given by the arresting officer "at the time of arrest." OCGA § 40-6-392 (a) (4); see also OCGA § 40-5-67.1. In each case, the warning must be given at a time as close in proximity to the instant of arrest as the circumstances of that particular case might warrant. *Edge v. State*, 226 Ga. App. 559, 560 (1) (a) (487 SE2d 117) (1997). "Only in limited situations is a delay warranted, such as where advising the accused at the moment of physical arrest would not enable him to make an intelligent choice concerning the state's request and his right to undergo an independent test or where the exigencies of police work prevent giving the advice. See *Perano v. State*, 250 Ga. 704, 707 (300 SE2d 668) (1983)." Id.

After hearing the evidence at the suppression hearing, the trial court concluded that considering all the circumstances confronting the investigating officer, the implied consent warning was timely. In reaching this determination, the trial court found evidence of a perceived threat of a fire or explosion at the accident scene, and an apparent need for prompt medical transportation of the defendant for medical treatment at a hospital. Although the evidence shows that smoke was coming from the engine of Townsend's truck, the threat of fire and explosion appears to have been perceived only by the driver of the car which Townsend struck and not by the officer. There exists sufficient evidence, however, from which the trial court could infer there was an apparent need for Townsend to be promptly transported to a hospital. The officer also testified that for safety reasons, he stayed at the accident scene until the vehicles were towed; and when he reached the hospital, Townsend was still receiving medical treatment. The officer read Townsend the implied consent warn-

ing when he next had the opportunity to speak to him.

Viewing this evidence in a light most favorable to the trial court's ruling, we find that a fair risk existed that at the accident scene Townsend would not have been able to make an intelligent choice concerning the state's request for a blood test, and there was also a fair risk that he would not have been able to understand his right to undergo an independent test. As in *Edge*, supra at 561 (1) (a), there exists no evidence that Townsend would have benefitted by being informed of his rights at an earlier point in time. We are also satisfied that the investigating officer was prevented by the exigencies of police and medical work from giving the implied consent warning any sooner. We will not reverse the correct ruling of a trial court regardless of the reason given therefor. See *Krebsbach v. State*, 209 Ga. App. 474 (1) (433 SE2d 649) (1993).

We note that Townsend also failed to establish, either by citation to the record or transcript, the amount of time which elapsed from his arrest to the time when he was given the implied consent warning. Townsend merely argues that the warning was not given until after the officer arrived at the hospital. See *Talley v. State*, 200 Ga. App. 442, 446 (4) (408 SE2d 463) (1991).

2. Applying the standard approved in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), there exists sufficient evidence to support Townsend's conviction of driving with an unlawful alcohol concentration in his blood under former OCGA § 40-6-391 (a) (4).

3. Townsend asserts the trial court erred in quashing his subpoenas for production of documentary evidence and that this error violated his right to a thorough and searching cross-examination. In particular, Townsend argues that he was denied an adequate opportunity to identify the blood sample, to challenge the accuracy of the state's blood test results, and to challenge and impeach the testimony of the state's expert witness. He also asserts that he was entitled to chain of custody documents to determine whether the state's chemist had followed reasonable scientific procedures to avoid contamination and mismatch of the samples.

In pertinent part, OCGA § 40-6-392 (a) (4) provides that "[u]pon the request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney." This discovery rule, which is consistent with the broad right of cross-examination provided in OCGA § 24-9-64, grants broader discovery rights than did earlier criminal discovery procedures which allowed discovery of only written scientific reports. See *Price v. State*, 269 Ga. 222, 224 (2) (498 SE2d 262) (1998). Thus, as a general rule, a defendant now has the right to subpoena memos, notes, graphs, computer

printouts, and other data relied upon by a state crime lab chemist in obtaining gas chromatography test results. Id. However, a trial court has discretion to quash an unreasonable and oppressive subpoena, and abuse of discretion is the appropriate standard of review in such situations. OCGA § 24-10-22 (b) (1); see *Price v. State*, supra. Whether the trial court should quash a subpoena depends on the nature and scope of the discovery request. See *Price*, supra.

Townsend was seeking, among other documents, "[c]opies of any and all documents, as the same relates to the analysis of the blood sample which was seized from [him] . . . , including but not limited to all notes, memorandums, reports, statistics, submission sheets, worksheets, tracking sheets, chromatographs of the analysis of the blood sample, information pertaining to any and all standards and controls utilized in the testing procedure, etc., that [the state's forensic chemist] may have prepared or that may have been prepared by others which [sic] are in [the chemist's] possession." He was also seeking records "of each and every individual who handled [his blood] sample or who participated in the analysis of the sample to show proof of the chain of custody." The trial court granted the state's motion to quash this subpoena.

The burden is upon Townsend to show both error and harm. Under the circumstances of this case, we find that the error was harmless. Townsend's counsel contended at the motion hearing that either the test results were transposed erroneously or that the sample tested did not belong to Townsend. While the trial court granted the motion to quash, he provided Townsend with an equally effective remedy to test the validity of the blood sample, the testing procedure, and the test results. At Townsend's request, the trial court ruled that an expert forensic chemist of Townsend's selection would be permitted to examine a sample of Townsend's blood and directed the GBI to release the sample to Townsend's attorney or authorized agent. By giving Townsend the blood sample and allowing him to have it independently tested, Townsend had the means to effectively challenge the validity of the sample and the accuracy of the state's testing procedures and test results. If a discrepancy did appear, Townsend was free to present this information to the trial court and to renew his requests. Townsend's claim of prejudicial error is without merit.

*Judgment affirmed. Smith and Barnes, JJ., concur.*

DECIDED FEBRUARY 4, 1999 —
RECONSIDERATION DENIED FEBRUARY 18, 1999 — 

*Monte K. Davis*, for appellant.

*Ralph T. Bowden, Jr., Solicitor, Margaret A. Dunaway, Gwendolyn R. Keyes, Assistant Solicitors*, for appellee.