## A00A0071. BAZEMORE v. THE STATE.
### (535 SE2d 830)

Pope, Presiding Judge.

This case appears before us for the third time. See *Bazemore v. State,* 225 Ga. App. 741 (484 SE2d 673) (1997) (*Bazemore I*); *Bazemore v. State,* 233 Ga. App. 892 (506 SE2d 177) (1998) (*Bazemore II*). The only remaining question is whether the trial court erred in quashing Bazemore's subpoena for production of numerous records from the State's forensic chemist related to the blood test that led to his conviction of driving with an unlawful blood alcohol level.

In *Bazemore I,* we affirmed Bazemore's conviction for driving with an unlawful alcohol concentration and speeding. The Supreme Court granted certiorari and remanded the case for reconsideration in light of *Price v. State,* 269 Ga. 222, 224 (2) (498 SE2d 262) (1998), which was based in part on *Eason v. State,* 260 Ga. 445 (396 SE2d 492) (1990), overruled in part by *State v. Lucious,* 271 Ga. 361, 365 (4) (b) (518 SE2d 677) (1999) (see footnote 1, infra). In *Bazemore II,* because we could not determine the basis for the trial court's original order, we vacated the judgment of driving with an unlawful alcohol concentration and remanded the case to the trial court for reconsideration of the ruling on the motion to quash in light of *Price* and *Eason.*

The trial court reconsidered, issued an order upholding its previous decision to quash the subpoena and entered a new judgment of conviction on the charge of driving with an unlawful alcohol concentration. The trial court held that it quashed the subpoena both because Bazemore failed to meet his initial burden of showing "the relevancy of the majority of the documents sought by the subpoena" and because the subpoena was unreasonable and oppressive. We now reconsider that decision.

1. As stated in *Bazemore II,* "When a motion to quash is filed, the party serving the subpoena has the initial burden of showing the documents sought are relevant. OCGA § 24-10-22; [cit.]" *Bazemore II,* 233 Ga. App. at 893 (2).

Bazemore was charged with driving with a 0.13 blood alcohol level. As described in the trial court's order, Bazemore's subpoena

ordered the State's forensic chemist to produce the following items:

a. all chain of custody documents;

b. [as the same relates to the analysis of Bazemore's blood sample,] all notes, memos, reports, statistics, submission sheets, worksheets, tracking sheets, chromatographs, and any information pertaining to any and all standards and controls utilized in testing;

c. all testing manuals and training materials utilized by the G.B.I. Crime Lab to learn blood sample testing and analysis for alcohol content;

d. all permits and certificates regarding the technician, who drew the sample of Defendant's blood . . . ;

e. all written techniques, methods, or procedures approved by the Division of Forensic Sciences of the G.B.I. to ascertain qualifications and competency of personnel drawing and analyzing Defendant's blood;

f. all written techniques, methods, or procedures which have been approved by the Division of Forensic Sciences of the G.B.I. regarding proper testing/analysis procedures to be followed by the chemist who analyzed Defendant's blood;

g. all written techniques, methods, or procedures which have been approved by the Division of Forensic Sciences of the G.B.I. regarding the proper operation, maintenance, testing and calibration of the Gas Chromatograph used to analyze Defendant's blood; and

h. all certificates of the Gas Chromatograph used to analyze Defendant's blood which show that it is a design approved by the G.B.I. in accordance with OCGA § 50-13-1 thru 50-13-44 and it has all its electronic and operating components in good working order pursuant to OCGA § 40-6-392 (a) (1) (A).

Bazemore contends that it met its burden of showing the documents it sought were relevant. Bazemore argued that under *Eason* he was entitled to the information for the purpose of cross-examination and impeachment. He urged that he was entitled to all facts the chemist relied on in forming his opinion. He intended to use the material to impeach the witness, and he planned to have the material reviewed by his own expert. He argued, "If [the State is] going to try to introduce a blood test, then it's relevant for me to know how [the chemist] came to his conclusion, so I can cross-examine him."

OCGA § 40-6-392 (a) (4) provides that the defendant is entitled to full information concerning the tests administered to him: "Upon the request of the person who shall submit to a chemical test or tests

at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney." *Price* held that this Code section allows for broader discovery than under the former criminal discovery provisions that allowed discovery only of written scientific reports. *Price*, 269 Ga. at 224 (2). Accordingly, the document requested in that case, the printed results of the gas chromatography test of the defendant's blood, was discoverable. Id.

*Eason* held that a defendant "has the right to subpoena certain materials from the State Crime Lab chemist for the purpose of cross-examination." *Eason*, 260 Ga. at 445 (2). *Eason* specifically held that the defendant may subpoena "those memos, notes, graphs, computer print-outs, and other data the State Crime Lab Chemist relied upon to support her testimony and opinion during her direct examination." Id. at 446-447 (2). See also *Townsend v. State*, 236 Ga. App. 530, 532-. 533 (3) (511 SE2d 587) (1999) (although harmless for other reasons, it was error to quash subpoena seeking items listed in *Eason*, standards and controls used during testing, and chain of custody data).[1]

Thus, Bazemore sustained his burden of showing relevance of at least some of the documents requested in the subpoena. Under *Price*, *Eason*, and *Townsend*, the documents requested in sections "a" and "b," which pertain to the actual test of defendant's blood, including the gas chromatography results, were relevant and discoverable. Bazemore is authorized to obtain this information under OCGA § 40-6-392 (a) (4) for the purpose of cross-examination of the State's laboratory test results. As quoted in *Eason*,

> A basic principle of scientific testing is that careful records of test procedures and results are to be scrupulously maintained. A scientific test without an accompanying report of the testing environment, number of trials, raw results and analyzed data is in reality no test at all.

(Citation and punctuation omitted.) *Eason*, 260 Ga. at 446.

---

[1] Complicating matters is that last year, the Supreme Court overruled *Eason* to the extent it allows a defendant to unilaterally obtain evidence of scientific work product. *Lucious*, 271 Ga. at 365 (4) (b). But, that decision was based on an interpretation of that portion of Georgia's Criminal Procedure Discovery Act, OCGA § 17-16-1 et seq., applicable to felony cases. Id. Compare OCGA § 17-16-2 and § 17-16-20. Under the section of the act applicable to misdemeanors, a defendant is still entitled to scientific reports without having to agree to reciprocal discovery. See OCGA § 17-16-20 et seq. The discovery act repealed OCGA § 17-7-211, which required disclosure of written scientific reports but reenacted its provisions to apply to misdemeanor cases. See OCGA § 17-16-23; Ga. L. 1994, p. 1895, § 1. See also *Lucious*, 271 Ga. at 369 (1) (Fletcher, P. J., dissenting) (other provisions reenacted just for misdemeanors). Presumably, the reasoning of *Eason* is still applicable to misdemeanor cases, such as here.

With regard to the documents requested in sections "c," "e," "f," and "g," our decision is controlled by *Bazemore I*. Division 5 of *Bazemore I* is the only section of that case affected by the *Price* decision and thus by the Supreme Court's remand. See *Bazemore II*, 233 Ga. App. at 892 (2). In Divisions 2 and 3 of *Bazemore I*, we found that the record plainly shows that the "methods and procedures" required by OCGA § 40-6-392 (a) (1) (A) were available to Bazemore. *Bazemore I*, 225 Ga. App. at 743-745. We will not revisit that ruling. Therefore, we need not determine whether Bazemore made a showing of relevance or whether the documents are discoverable.

As for the remaining documents, Bazemore did not show that they are relevant. In sections "d" and "h," Bazemore requested documents that go to part of the State's burden of proof with regard to blood alcohol tests. As shown in *Bazemore I*, the State must prove "at trial" the qualifications of the person who drew the blood pursuant to OCGA § 40-6-392 (a) (2). *Bazemore I*, 225 Ga. App. at 741 (1). And, the State may prove the qualifications in ways other than introducing permits or certifications of the person who drew the blood. Id. at 741-742 (1). The same applies to certification that the machine was fully configured and operating properly. Id. at 744 (2). Given that the State need not introduce the various permits and certifications that Bazemore sought, Bazemore has not shown that these documents are sufficiently relevant to be discovered.

Finally, "there is no general constitutional right to discovery in a criminal case. [Cits.]" *Lucious*, 271 Ga. at 364 (4). As stated by the Supreme Court, the right to confrontation does not mean the defendant in a criminal action is entitled to any and all possible useful information in the State's possession:

> The right to confrontation is a "trial right," guaranteeing a defendant the ability to confront and question adverse witnesses at trial. [Cits.] As a trial right, it "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony," [cit.] and does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. (Cit.)" [Cit.]

*Lucious*, 271 Ga. at 364 (2) (b).

2. The second question is whether the subpoena was overly broad.

> [A] trial court has discretion to quash an unreasonable and oppressive subpoena, and abuse of discretion is the appropriate standard of review in such situations. OCGA § 24-10-

22 (b) (1); [cit.] Whether the trial court should quash a subpoena depends on the nature and scope of the discovery request. [Cit.]

*Townsend*, 236 Ga. App. at 533 (3). "[T]he party moving to quash has the burden of showing that the subpoena is unreasonable and oppressive. OCGA § 24-10-22 (b); [cit.]" *Bazemore II*, 233 Ga. App. at 893 (2).

In response to a motion to quash, a court may quash, modify, or partially quash a subpoena. OCGA § 24-10-22. See also *Henderson v. State*, 255 Ga. 687, 690, n. 2 (341 SE2d 439) (1986). Appellate courts may consider whether only part of a subpoena was improperly quashed. Id.

The State argued that the subpoena itself showed that it was unreasonable and oppressive, in that it sought numerous documents. Although Bazemore's subpoena sought much more than the subpoena in *Price*, it sought several relevant documents, and the court should have allowed discovery of those documents. Bazemore specifically requested chain of custody documents and documents related to his actual blood test, including the gas chromatography results. Under OCGA § 40-6-392 (a) (4) and *Price*, it was error to quash these requests.

3. As we held in *Bazemore II*, "Because the testimony of the State's chemist was evidence of Bazemore's unlawful blood level, we cannot state with any certainty from the record before us that any error in quashing the subpoena would be harmless." Id. at 893. Therefore, following *Price*, we reverse.

4. Construed in favor of the verdict, the evidence, including the blood test results, was sufficient to convict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment reversed. Smith, P. J., and Miller, J., concur.*

DECIDED JUNE 13, 2000.

*Monte K. Davis*, for appellant.

*Gwendolyn R. Keyes, Solicitor, Robert R. McNeill, Thomas E. Csider, Assistant Solicitors*, for appellee.