## A01A2379. BLAKE v. SPEARS.
(561 SE2d 173)

RUFFIN, Judge.

Randy Blake appeals from the trial court's order incarcerating him for failing to comply with a subpoena to produce documents. Blake asserts that the trial court erred in denying his motion to quash the subpoena, in finding that he did not comply with the subpoena, in incarcerating him for contempt, in refusing to immediately rule on his request for supersedeas, and in issuing further rulings after he filed this appeal. For reasons that follow, we affirm.

This action commenced when Robert Spears sued Blake, alleging that he purchased Blake's interest in a bar and restaurant called Shooters, but that Blake refused to turn over the business's assets and financial records. Spears sought specific performance of the purchase agreement and temporary and permanent injunctive relief. Following a November 21, 2000 evidentiary hearing attended by both parties, the trial court entered a preliminary injunction ordering,

---

inter alia, that Blake "immediately" give Spears the business records and assets of Shooters.

It appears that Blake failed to comply with the trial court's order and, over the next three months, the court conducted three or four conferences with the parties to resolve the matter, but had no success. Finally, the court scheduled a show cause hearing, requiring Blake to explain his lack of compliance. Before the hearing, Spears served a subpoena requiring Blake to produce in court many of the same documents that the court had previously ordered him to turn over under the preliminary injunction. At the conclusion of the hearing, the trial court determined that Blake failed to comply with the subpoena and ordered that he be incarcerated until he complied or made a sufficient effort to comply.

1. In his first enumeration of error, Blake asserts that the trial court erred in refusing to quash the subpoena because it was improperly served.

The record shows that Blake first retained attorney Robert Sichel as counsel on February 13, 2001. It appears that Sichel immediately telephoned Spears' counsel and sent a letter to the court stating that he was representing Blake. That same day, counsel for Spears sent the subpoena to Sichel both by facsimile and overnight delivery. Sichel acknowledged at the hearing that he received both copies of the subpoena and further conceded that he called the trial judge on February 14, told him he was representing Blake, and asked for a continuance of the show cause hearing, which the court granted. Notwithstanding these facts, Sichel contends service was improper because he was not counsel of record when he received the subpoena and because Spears produced no evidence establishing service by statutory overnight delivery.[1]

Service of subpoenas is governed by OCGA § 24-10-23, which provides in part that "[s]ubpoenas may . . . be served by registered or certified mail or statutory overnight delivery, and the return receipt shall constitute prima-facie proof of service. Service upon a party may be made by serving his counsel of record."[2] Here, Sichel acknowledged in open court that Spears' counsel "overnighted [the subpoena] to me via Federal Express." Such acknowledgment constitutes an admission in judicio, which is binding on Blake,[3] and we are frankly troubled that he would now contend that no such service occurred.

Likewise, Sichel agreed at the show cause hearing that his corre-

---

[1] See OCGA § 24-10-23 (Supp. 2001).

[2] See also OCGA § 9-10-12 (b) (Supp. 2001) (defining "statutory overnight delivery").

[3] See *Dixon Dairy Farms v. Conagra Feed Co.*, 245 Ga. App. 836, 838, n. 10 (538 SE2d 897) (2000).

spondence with the court stating that he represented Blake was equivalent to an entry of appearance. In light of such admission and Sichel's notifications to the court and opposing counsel that he was representing Blake, Blake is estopped from now asserting that Sichel was not his counsel of record simply because the attorney failed to properly enter an appearance under Uniform Superior Court Rule 4.2.[4] Even assuming that Sichel's written notification to the court did not technically comply with Rule 4.2, it is clear that opposing counsel relied on Sichel's representations in serving the subpoena.[5] Accordingly, service was proper.

2. We also find no merit in Blake's assertion that the trial court should have quashed the subpoena because it was unreasonable and oppressive. "OCGA § 24-10-22 (b) (1) gives the trial court discretion upon timely motion to quash or modify such a subpoena if it is unreasonable and oppressive. This standard is tested by the peculiar facts arising from the subpoena itself and other proper sources."[6] In this case, Blake asserts the subpoena was unreasonable because he was already required to produce the same documents under the court's preliminary injunction order. As stated above, however, the court conducted the show cause hearing because Blake had largely failed to comply with the court's order. Thus, the trial court did not abuse its discretion in failing to quash the subpoena on this ground.[7]

Blake also argues the subpoena was unreasonable because it required him to produce banking records from two other businesses he owned, Blue Jean Jobs and Blue Jean Staffing. The record reflects, however, that assets of those businesses may have been commingled with assets belonging to Shooters and that Spears was merely attempting to determine the extent of the alleged commingling. Accordingly, the records were relevant, and the trial court did not abuse its discretion in failing to quash the subpoena on this ground.[8]

3. Blake next asserts that the trial court erred in finding that he wilfully failed to comply with the subpoena. Again we disagree. Although Blake asserted that he gave Spears all the documents he had, the trial court acted as the trier of fact, and its finding that

---

[4] See generally *Foster v. Cohen*, 203 Ga. App. 434, 436-437 (1) (417 SE2d 61) (1992) ("Admissions which have been *acted on by others*[ ] are conclusive against the party making them, in all cases, between him and the person whose conduct he has thus influenced. In such cases, the party is estopped, on grounds of public policy and good faith, from *repudiating* his own representations.") (punctuation omitted; emphasis in original).

[5] See id.

[6] (Punctuation omitted.) *Washburn v. Sardi's Restaurants*, 191 Ga. App. 307, 310 (4) (381 SE2d 750) (1989).

[7] See id.

[8] See id.

Blake wilfully failed to turn over certain documents will not be reversed if there is any evidence to support it.[9]

The evidence shows that, on the first day of the show cause hearing, Blake asserted that he had given Spears all of Shooters' year 2000 banking records in his possession, but he actually produced only miscellaneous checks. Blake also acknowledged that his accounting firm prepared sales and tax records and returns and that copies of these records were at Shooters, but that he had not brought them with him. In addition, Blake failed to bring any of the requested documents concerning Blue Jean Jobs and Blue Jean Staffing, relying on his assertion that such documents were irrelevant. The trial court found that Blake failed to bring numerous documents required by the subpoena and gave him until the following Monday afternoon to produce the documents or face incarceration.

The following Monday, Blake and Spears returned to court, but Blake failed to bring many of the required documents. For instance, although Blake previously testified that he possessed all of Shooters' financial records and produced some cancelled checks from September and October 2000, he did not turn over any other cancelled checks, deposit slips, monthly account statements, or checkbooks. In addition, Blake failed to produce any payroll records, even though he testified that employees were paid in cash and that he had receipts signed by employees for the payments. Likewise, while Blake previously testified that Shooters had paid its current insurance premiums and sales tax, he produced no documents concerning such policies or tax. Blake also admitted having an audit and other documents which proved that a former manager of Shooters had stolen $31,000 from the business, but failed to produce any such documents concerning the claim. Finally, although Blake unequivocally testified that he had an ownership interest in both Blue Jean Jobs and Blue Jean Staffing, he turned over only a few, select documents concerning those two businesses and what appear to be affiliated entities, but failed to produce a large number of other documents required by the subpoena. In light of this evidence, the trial court did not err in finding that Blake wilfully failed to comply with the subpoena.[10]

4. Blake contends that the court erred in incarcerating him for his failure to comply with the subpoena. We disagree. OCGA § 24-10-25 authorizes a court to enforce a subpoena by "imprisonment not exceeding 20 days." Although Blake argues that incarceration was improper here because he testified he did not possess the documents, we addressed and rejected that assertion above. Again, the record

---

[9] See *Deep South Constr. v. Slack*, 248 Ga. App. 183, 187 (3) (546 SE2d 302) (2001); *Butler v. Biven Software*, 238 Ga. App. 525, 527 (2) (522 SE2d 1) (1999).

[10] See *Slack*, supra; *Butler*, supra.

contains evidence showing that Blake possessed many of the documents and simply failed to produce them. Furthermore, considering that he had already repeatedly violated the court's order to produce the documents, even before he violated the subpoena, we disagree with Blake that a lesser sanction would have been more appropriate.

5. Immediately after the trial court ordered that Blake be taken into custody, his counsel announced that he had an application for supersedeas. In response, the trial judge stated: "Court is adjourned, counselor. Come in tomorrow when court comes back in session." Blake asserts that, in light of his counsel's announcement, the trial court erred in having him incarcerated. Again, we disagree.

In contempt cases, a grant of supersedeas is governed by OCGA § 5-6-13 (a), which provides:

> A judge of any trial court or tribunal having the power to adjudge and punish for contempt shall grant to any person convicted of or adjudged to be in contempt of court a supersedeas upon application and compliance with the provisions of law as to appeal and certiorari, where the person also submits, within the time prescribed by law, written notice that he intends to seek review of the conviction or adjudication of contempt. It shall not be in the discretion of any trial court judge to grant or refuse a supersedeas in cases of contempt.

This Code section requires a court to grant supersedeas only if a person applies for supersedeas and submits a written notice of intent to appeal.[11] Even if we assume that Blake's counsel attempted to hand the trial judge an application for supersedeas, which the record does not reflect, there is absolutely no indication that he submitted a written notice of intent to appeal. Thus, the record contains no evidence that Blake complied with OCGA § 5-6-13 at this juncture, and the trial court did not err in refusing to grant supersedeas under that section.[12]

Although we find no error, our conclusion should not be considered an endorsement of the trial court's curt reply to counsel's attempt to secure a grant of supersedeas. Although Blake had not yet complied with the requirements for the trial court to grant the application, and the judge was obviously tiring of his failure to produce the documents, it would have been preferable for the court to allow counsel a few brief minutes to prepare the documents for submission.

---

[11] See OCGA § 5-6-13 (a); *Calvert Enterprises v. Griffin-Spalding County Hosp. Auth.*, 197 Ga. App. 727, 728 (1) (399 SE2d 287) (1990).

[12] Cf. id. at 728-729 (trial court erred in refusing to grant supersedeas where record reflected that party attempted to submit written application and notice of intent to appeal).

In any event, inasmuch as Blake was being hauled off to jail, the court could have explained to counsel its reason for denying the motion. That said, we note that Blake filed a notice of intent to appeal and an application for supersedeas the next day, which was immediately granted by the trial court.

6. In his final enumeration of error, Blake asserts that the trial court erred in entering another order attempting to enforce the subpoena while this appeal was pending. We agree.

The record reveals that after the trial court granted supersedeas, it issued another order giving Blake "one final opportunity . . . to fully and completely comply with the Court's Preliminary Injunction of November 21, 2000 and the valid and enforceable Subpoena For The Production of Evidence properly served on Defendant by Plaintiff on or about February 5, 2001." According to the order, if Blake failed to comply, the court would impose additional sanctions.

"The general rule is that a supersedeas suspends all further proceedings in the suit in which the judgment superseded is rendered, such as are based upon and relate to the carrying into effect of that judgment. Under this rule, the supersedeas, during its pendency, prevents any steps to enforce or carry into effect the judgment."[13] Because the trial court had already granted supersedeas, it was without authority to enforce the subpoena at issue.[14] Such conclusion, however, does not require reversal of the trial court's original order finding Blake in contempt for wilfully failing to comply with the subpoena. The judgment on appeal, therefore, is affirmed. Spears' request for sanctions is denied.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 22, 2002.

*Robert S. Sichel*, for appellant.
*Johnson & Ward, James E. Goodman*, for appellee.

---

[13] (Punctuation omitted.) *Abney v. Harris*, 208 Ga. 184, 187 (4) (65 SE2d 905) (1951). See also *Lake v. Hamilton Bank of Dalton*, 150 Ga. App. 123, 125 (257 SE2d 31) (1979).
[14] See id.