**FIFTH DIVISION
PHIPPS, P. J.,
DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 26, 2016**

# In the Court of Appeals of Georgia

A16A1371. IN RE: CLAY WHITTLE, SHERIFF.

DILLARD, Judge.

Clay Whittle, sheriff of Columbia County, Georgia, appeals from the trial court's denial of his motion to quash a subpoena filed by Carneluis White to obtain the investigative file maintained by the sheriff's department for charges upon which the State sought to revoke his probation. Whittle argues on appeal that the trial court erred in denying the motion to quash because the court's order (1) grants previously convicted defendants greater access to investigative-file information than similarly situated individuals who have merely been indicted; (2) grants previously convicted defendants an opportunity to bypass the reciprocal discovery process; (3) compels production of investigative-file documents despite a lack of any showing that the materials are relevant, material, or favorable to White's defense, or that the materials

cannot be otherwise obtained; and (4) fails to recognize that White waived his right to subpoena the file when presented with an opportunity to examine the file during cross-examination at the probation-revocation hearing. For the reasons set forth *infra*, we affirm.

The record reflects that in August 2013, White pleaded guilty to the felony offenses of theft by deception and theft by receiving stolen property. He was thereafter sentenced to ten years' probation on each count, to run concurrent with one another. But on June 4, 2015, the State filed a petition to revoke White's probation, alleging that he had violated the terms of his probation by, *inter alia*, "being charged with the new offense of [t]heft by conversion (2 cts.) by the Columbia County Sheriff's [Department] on or about 3/20/2015." As a result, White was ordered to show cause why his probation should not be revoked or modified.

On October 29, 2015, White served Whittle with a subpoena for the production of evidence in preparation for his probation-revocation hearing. Specifically, he sought

[a]ny and all incident reports, written witness statements, arrest reports, investigation notes, documents, etc.[1] connected with [his] arrest by the Columbia County Sheriff's Office on or about March 20, 2015, or connected with the Sheriff's Office charging [him] with theft by conversion on or about the same date. Documents include any written agreements between Mr. White [and the alleged victims].

Whittle refused to comply with the subpoena for evidence, citing exceptions to the Open Records Act, and on November 9, 2015, White filed a motion to enforce the subpoena. In response, Whittle filed an emergency motion to quash the subpoena, again citing exceptions to the Open Records Act,[2] and White filed a brief in

[1] When the trial court denied Whittle's motion to quash, it modified the subpoena to delete instances of "etc."

[2] In his initial appellate brief, Whittle does not reassert his argument that OCGA § 50-18-72, which excepts certain records from required public disclosure under the Open Records Act, *see* OCGA § 50-18-70 *et seq.*, applies to exclude disclosure of those same records for purposes of a subpoena duces tecum filed under Georgia's Evidence Code, *see* OCGA § 24-13-23. We decline to adopt White's suggestion that we reform the enumerations of error to address arguments that Whittle has outright abandoned and waived for appellate review. And although Whittle argues the applicability of the Open Records Act in his reply brief, we do not consider an expansion of arguments contained in a reply brief. *See Leonard v. State*, 325 Ga. App. 577, 577 n.1 (754 SE2d 155) (2014) (holding that appellant's attempt to expand the scope of his arguments with additional argument for reversal in reply brief was an assertion of an argument "beyond the scope of the enumerated error and will not be considered by this Court"); *Perez v. Atlanta Check Cashers, Inc.*, 302 Ga. App. 864, 867 n.3 (692 SE2d 670) (2010) ("[A] party may not use his reply brief to expand his enumeration of errors by arguing the incorrectness of a trial court's ruling not

3

opposition to the emergency motion. Whittle then responded to the brief in opposition, adding arguments that the subpoena was unreasonable and oppressive, and thereafter, the trial court heard testimony as to the probation revocation[3] and argument as to the motion to enforce subpoena on November 10, 2015.

On January 22, 2016, the trial court issued an order denying the motion to quash the subpoena. The court also later issued an order permitting an application for interlocutory appeal, which we granted. Whittle's appeal follows, in which he makes the enumerations of error set forth *supra*.

At the outset, we note that a trial court's ruling on a motion to quash a subpoena is reviewed for an abuse of discretion.[4] And whether or not the trial court

---

mentioned in the enumeration." (punctuation omitted)).

[3] Though it heard testimony on the issue as a courtesy to witnesses who had been waiting for hours to testify, the court continued the probation-revocation matter pending resolution of this appeal.

[4] *See Price v. State*, 269 Ga. 222, 224 (2) (498 SE2d 262) (1998) (noting that a trial court has the discretion to quash an unreasonable and oppressive subpoena); *Bazemore v. State*, 244 Ga. App. 460, 463 (2) (535 SE2d 830) (2000) ("A trial court has discretion to quash an unreasonable and oppressive subpoena, and abuse of discretion is the appropriate standard of review in such situations." (punctuation omitted)); *Townsend v. State*, 236 Ga. App. 530, 532 (3) (511 SE2d 587) (1999) (same).

4

should quash a subpoena "depends on the nature and scope of the discovery request."[5]

With these guiding principles in mind, we will now address Whittle's enumerations of error.

1. First, Whittle argues that the trial court's denial of the motion to quash White's subpoena grants previously convicted defendants greater access to investigative-file information than similarly situated individuals who have merely been indicted. Separately, but similarly, Whittle also argues that the trial court's denial of the motion to quash grants previously convicted defendants an opportunity to bypass the reciprocal-discovery process. We disagree that the trial court erred in denying the motion to quash in light of these strictly policy-based arguments.

Whittle strenuously argues that, as a policy matter, the trial court's denial of the motion to quash was erroneous because the decision "essentially grants a convicted criminal at a revocation hearing who is charged with a new offense greater rights than an individual with no criminal record who is indicted on felony charges" and allows a probationer to "circumvent the discovery parameters set forth by the legislature and obtain access to the investigative file . . . via subpoena at any time." Whittle contends

---

[5] *Bazemore*, 244 Ga. App. at 463 (2) (punctuation omitted); *see also Price*, 269 Ga. at 224 (2) (same); *Townsend*, 236 Ga. App. at 532 (3) (same).

that the General Assembly could not have intended for this to be possible. However, despite Whittle's many policy-based assertions, "[t]he General Assembly does not enact a general intention, it enacts statutes."[6] And statutes have words with a reasonable range of meaning "that we interpret and apply," rather than some "amorphous general intention."[7] This is because, in the context of legislation, discerning "collective intent is pure fiction because dozens if not hundreds of legislators have their own subjective views on the minutiae of bills they are voting on—or perhaps no views at all because they are wholly unaware of the minutiae."[8] Thus, in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[9] And

---

[6] *Malphurs v. State*, 336 Ga. App. 867, 870 (785 SE2d 414) (2016).

[7] *Id.* at 871.

[8] ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF STATUTORY TEXTS 392 (1st ed. 2012); *see also Malphurs*, 336 Ga. App. at 871 (noting that "our concern is with the actual text of statutes, not the subjective statements of individual legislators expressing their personal intent in voting for or against a bill").

[9] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation and citation omitted); *see also Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012) (same); *Martinez v. State*, 325 Ga. App. 267, 273 (750 SE2d 504) (2013) (same).

toward that end, we must afford the statutory text its plain and ordinary meaning,[10] consider the text contextually,[11] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[12] and seek to "avoid a construction that makes some language mere surplusage."[13] In summary, when the

---

[10] *See Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation and citation omitted)); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . .").

[11] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___ (133 SCt 2247, 2254, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation and citation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (775 SE2d 527) (2015) ("The common and customary usages of the words are important, but so is their context." (punctuation and citation omitted)).

[12] *Deal*, 294 Ga. at 172-73 (1) (a); *see also Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) ("[When] the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly[.]" (punctuation omitted)).

[13] *In the Interest of L.T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation and citation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011).

language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[14]

Specifically, OCGA § 24-13-23 permits subpoenas for the production of evidence,[15] which a trial court may, upon written motion, (1) quash or modify if the subpoena is unreasonable and oppressive,[16] or (2) condition denial of the motion "upon the advancement by the person [on] whose behalf the subpoena is issued of the reasonable cost of producing the evidence."[17] Moreover, OCGA § 24-13-20 provides that Article 2 of Chapter 13 to Title 24 applies to "all civil proceedings and, insofar as consistent with the Constitution, all criminal proceedings." And the subpoena power is, of course, contained within Georgia's Evidence Code,[18] which is entirely

---

[14] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *see also Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[15] OCGA § 24-13-23 (a) ("A subpoena may also command the person to whom it is directed to produce the evidence designated therein.").

[16] OCGA § 24-13-23 (b) (1).

[17] OCGA § 24-13-23 (b) (2).

[18] *See generally* OCGA § 24-1-1 *et seq.*

separate from Geogia's Criminal Procedure Code.[19] Finally, Georgia's Criminal

Procedure Code contains provisions for reciprocal discovery,[20] which are applicable

to "all criminal cases in which at least one felony offense is charged,"[21] as well as the

discovery provisions applicable to misdemeanor cases.[22]

Here, of course, we are considering and applying the forgoing statutory

provisions in the context of a probation-revocation proceeding, which the Supreme

---

[19] *See generally* OCGA § 17-1-1 *et seq.*

[20] *See* OCGA § 17-16-4 (providing for the mutual disclosure of evidence by the prosecution and defendants); *see also State v. Lucious*, 271 Ga. 361, 362 (1) (518 SE2d 677) (1999) ("[Georgia's Criminal Procedure Discovery Act], which applies to those cases in which the defendant elects by written notice to have it apply, broadens discovery in felony cases by imposing corresponding discovery obligations upon both the defendant and the State. . . . [T]he Act provides a comprehensive scheme of reciprocal discovery in criminal felony cases.").

[21] OCGA § 17-16-2. *But see* OCGA § 17-16-20 (providing that Article 2 to Chapter 16 of Title 17 is applicable to, *inter alia*, "felony cases docketed, indicted, or in which an accusation was returned prior to January 1, 1995, if the prosecuting attorney and the defendant do not agree in writing that the provisions of Article 1 of this chapter shall apply").

[22] *See* OCGA § 17-16-20 (providing that Article 2 to Chapter 16 of Title 17 is applicable to, *inter alia*, misdemeanor cases); *see also Ford v. State*, 285 Ga. App. 106, 109 (2) (645 SE2d 590) (2007) ("The discovery provisions applicable to misdemeanor prosecutions are not the same as those applicable to felony prosecutions. In a misdemeanor case, the elective, optional mutual discovery provisions of OCGA § 17-6-1 et seq. are not available."); *Brooks v. State*, 267 Ga. App. 663, 664 (1) (600 SE2d 737) (2004) (same).

9

Court of the United States has held "is not a stage of a criminal prosecution," though probationers are certainly entitled to due process.[23] And indeed, we have explained that "[a] criminal prosecution and a probation revocation proceeding based on the same occurrence actually *have nothing to do with each other.*"[24] Instead, a probation-revocation proceeding is "somewhat like an application for a change of venue, which is of a civil nature,"[25] though it is not completely a civil proceeding.[26] Furthermore, because probation-revocation proceedings are *not* criminal trials, we have previously

---

[23] *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (II) (93 SCt 1750, 36 LE2d 656) (1973).

[24] *Brown v. State*, 294 Ga. App. 1, 2 (1) (668 SE2d 490) (2008) (punctuation omitted) (emphasis supplied); *accord Walker v. State*, 289 Ga. App. 879, 882 (8) (658 SE2d 375) (2008); *Morris v. State,* 166 Ga. App. 137, 140 (2) (303 SE2d 492) (1983).

[25] *Sellers v. State*, 107 Ga. App. 516, 518 (130 SE2d 790) (1963) (punctuation omitted).

[26] *See State v. Huckeba*, 258 Ga. App. 627, 631 (2) (b) (574 SE2d 856) (2002) (physical precedent only) (acknowledging that a probation-revocation hearing is not a criminal proceeding but noting that it is also not "completely a civil proceeding" because probation "is an act of grace extended to one already convicted of a crime in a trial providing the full protection of due process of law" (punctuation omitted)).

held that a trial court cannot err in denying a *Brady*[27] motion filed in reference to such a proceeding.[28]

Thus, the power to subpoena evidence and the requirements of reciprocal discovery are entirely separate matters within the Georgia Code, just as "[a] criminal prosecution and a probation revocation proceeding based on the same occurrence . . . have nothing to do with each other."[29] Nevertheless, in his first two enumerations of error, Whittle argues that permitting probationers to subpoena investigative files for purposes of probation-revocation hearings (1) provides probationers with greater rights of discovery than people merely indicted for a crime; (2) allows probationers to bypass non-party and witness protections afforded by the reciprocal-discovery

---

[27] *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

[28] *See Baltimore v. State*, 165 Ga. App. 741, 742 (1) (302 SE2d 427) (1983) ("[T]he defendant sought discovery with reference to the offense of shoplifting which was the primary ground alleged in a petition for revocation of defendant's probation. A revocation hearing is not a criminal trial. Therefore, the trial court could not err in denying a *Brady* motion for discovery with reference to the charge of shoplifting." (citations omitted)); *see also Poole v. State*, 167 Ga. App. 321, 322 (306 SE2d 394) (1983) ("[A] revocation proceeding is not a criminal trial and for that reason the trial court does not err in denying a *Brady* motion for discovery with reference to a criminal charge[.]").

[29] *Brown*, 294 Ga. App. at 2 (1) (punctuation omitted) (emphasis supplied); *accord Walker*, 289 Ga. App. at 882 (8); *Morris,* 166 Ga. App. at 140 (2).

11

statute;[30] (3) places an undue burden upon sheriff's offices and police departments; (4) removes the scope of proper criminal discovery from the hands of attorneys, who are better able to manage such requests; (5) materially prejudices co-defendants who do not have similar early access to discovery materials; and (6) greatly prejudices district attorney offices by permitting a probationer to "opt out" of reciprocal discovery by obtaining investigative files directly from sheriff's offices. But even if we were inclined to agree with Whittle on all of these points, we are not at liberty to graft his policy concerns onto statutory text that is plain and unambiguous. If Whittle's policy arguments are ultimately to prevail, he must make them to our General Assembly, not this Court.[31] Judges are charged with "interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies), as well as with faithfully following the precedents established by

---

[30] *See* OCGA § 17-16-4 (d) ("Upon a sufficient showing that a discovery required by this article would create a substantial threat of physical or economic harm to a witness, the court may at any time order that the discovery or inspection be denied, restricted, or deferred or make such other order as is appropriate.").

[31] *See Gary v. State*, Case No. A16A0666, 2016 WL 3884295, at *5 (2) (Ga. App. July 15, 2016) ("The remedy for this problem . . . lies with the General Assembly, not this Court."); *Ariemma v. Perlow*, 223 Ga. App. 360, 362 (477 SE2d 590) (1996) ("Although this may seem a harsh result, it is an issue for the legislature to address, not the courts.").

12

higher courts."[32] And both our constitutional system of government and the law of this State "prohibit the judicial branch from amending a statute by interpreting its language so as to change the otherwise plain and unambiguous provisions . . . ."[33]

And here, nothing in the plain language of the relevant statutes prohibits a probationer from obtaining the file at issue by way of a subpoena duces tecum in anticipation of a probation-revocation hearing.[34] Thus, so long as White met his initial

---

[32] *Able*, 321 Ga. App. at 636.

[33] *Gary*, 2016 WL 3884295, at *5 (2); *see also Richardson v. State*, 276 Ga. 639, 640 (1) (581 SE2d 528) (2003) ("Courts of last resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning." (punctuation omitted)).

[34] *Cf.* OCGA § 42-8-40 ("All reports, files, records, and information of whatever kind relative to the supervision of probationers and parolees are declared to be confidential and shall be available only to the probation system officials, the judge handling a particular case, the Board of Community Supervision, DCS, the Department of Corrections, the Department of Juvenile Justice, and the State Board of Pardons and Paroles, as appropriate. Such reports, files, records, and information shall not be subject to process of subpoena; provided, however, that the commissioner of community supervision may by written order declassify any such records."); *Penney v. State*, 157 Ga. App. 737, 738 (3) (278 SE2d 460) (1981) (construing prior version of OCGA § 42-8-40 to hold that because the relevant "records have been declared confidential and not subject to process of subpoena by statute, the trial court did not err in refusing to admit testimony relating to them" when appellant "served the chief probation officer . . . with a subpoena duces tecum requiring in part that he produce at [the] probation revocation hearing 'all records and petitions to revoke probation in Dougherty County in which the petition to revoke alleged that the

13

burden of showing that the documents sought were relevant (which the trial court determined he did),[35] and so long as the trial court did not deem the subpoena unreasonable and oppressive (which it did not),[36] the court did not abuse its discretion by denying Whittle's motion to quash.[37]

---

probationer had been convicted of D.U.I. within the past two years'").

[35] *See Bazemore*, 244 Ga. App. at 460 (1) ("When a motion to quash is filed, the party serving the subpoena has the initial burden of showing the documents sought are relevant." (punctuation omitted)); *Tuttle v. State*, 232 Ga. App. 530, 531-32 (2) (502 SE2d 355) (1998) ("The defense must make a prima facie showing that the requested materials are relevant to his defense and that he has a right to the materials[.]"); *see also Hickey v. RREF BB SBL Acquisitions, LLC*, 336 Ga. App. 411, 414 (2) (a) (785 SE2d 72) (2016) ("The only requirements placed by the Georgia legislature on discovery requested from nonparties is that the documents must be relevant and nonprivileged." (punctuation omitted)). For additional discussion, see Division 2 *infra*.

[36] *See* OCGA § 24-13-23 (b) (1); *see also Blake v. Spears*, 254 Ga. App. 21, 23 (2) (561 SE2d 173) (2002) ("OCGA § 24-10-22 (b) (1) gives the trial court discretion upon timely motion to quash or modify such a subpoena if it is unreasonable and oppressive. This standard is tested by the peculiar facts arising from the subpoena itself and other proper sources." (punctuation omitted)). For additional discussion, see Division 2 *infra*.

[37] It is worth noting that there may well be a simple, non-legislative solution to this dilemma. As appellee's counsel conceded at oral argument, the State can choose not to revoke White's probation or seek a postponement of the probation-revocation proceeding. This prosecutorial flexibility matters greatly because until and unless such a proceeding occurs, Whittle need not produce the documents in question. *See* OCGA § 24-13-21 (a) ("As used in this Code section, the term 'subpoena' includes a witness subpoena and a subpoena for the production of evidence."); OCGA

14

2. Next, Whittle argues that the trial court's denial of the motion to quash the subpoena compels production of investigative-file documents despite a lack of any showing that the materials are relevant, material, or favorable to White's defense, or that the materials cannot be otherwise obtained.

It is well established that when a motion to quash is filed, "the party serving the subpoena has the initial burden of showing the documents sought are relevant."[38] And here, in its order denying Whittle's motion to quash, the trial court determined that White met this burden. Indeed, the court noted that White had shown, "and *[Whittle] did not dispute*, that the records sought would be relevant to the determination of whether [White] violated either statute"[39] criminalizing theft by conversion.[40] The

§ 24-13-21 (b) ("A subpoena shall state the name of the court, the name of the clerk, and the title of the proceeding and shall command each person to whom it is directed to attend and give testimony or produce evidence at a time and place specified by the subpoena."). That said, to the extent there are public-safety concerns behind the State's decision to seek revocation of an individual's probation, this is not the only mechanism by which it may protect the public from those who pose a danger to society (*e.g.*, request the denial of bail). *See generally Ayala v. State*, 262 Ga. 704, 705-06 (1) (425 SE2d 282) (1993).

[38] *Bazemore*, 244 Ga. App. at 460 (1) (punctuation omitted).

[39] (Emphasis supplied).

[40] *See* OCGA § 16-8-4 (theft by conversion); OCGA § 16-8-15 (theft by conversion of payments for property improvements).

15

court concluded that the investigatory documents sought from the sheriff would likely reflect "the words, conduct, demeanor, motive, and all other circumstances connected with an act," which may be considered by a trier of fact, under OCGA § 16-2-6, to determine intent. Additionally, the court noted that "any written contracts would clearly be relevant to determine if [White] was in violation of the agreements with the complaining witnesses." Thus, the trial court found that White had met his burden of showing that the requested items were relevant. And because Whittle challenges the relevancy of the requested documents for the first time on appeal, we need not consider this argument.[41] Nevertheless, given the trial court's wide discretion to determine what evidence is relevant, Whittle has likewise failed to show that the trial court abused its discretion.[42]

---

[41] *See, e.g., GCCFC 2007-GGP Abercorn Street Ltd. Partnership v. Abercorn Common, LLP*, 316 Ga. App. 879, 881 (1) n.4 (730 SE2d 589) (2012) ("An appellate court need not consider arguments made for the first time on appeal.").

[42] *See Smith v. State*, 290 Ga. 428, 432-33 (6) (721 SE2d 892) (2012) ("We see no error in the trial court's refusal to enforce the subpoena duces tecum in light of the trial court's wide discretion in determining what evidence is relevant and material."); *Davenport v. State*, 316 Ga. App. 234, 241 (4) (729 SE2d 442) (2012) ("Given the trial court's wide discretion in determining what evidence is relevant and material, [the defendant] has failed to show [on appeal from the denial of a motion for new trial] that the trial court abused its discretion in refusing to enforce the subpoena."). *Cf. Taylor v. State*, 172 Ga. App. 827, 827 (1) (324 SE2d 788) (1984) (holding that trial court did not abuse its discretion in quashing subpoenas that "sought all of the

Additionally, Whittle cites to no authority in support of his suggestion that the trial court should have quashed the subpoena because White could have obtained the information through other means (*i.e.*, by the reciprocal discovery provisions for purposes of *trial* upon the new charges, an argument rejected in Division 1 *supra*).[43] Thus, we deem this argument abandoned for appellate review.[44]

Moreover, to the extent that Whittle argues that the subpoena was unreasonable or oppressive based upon the policy considerations set forth in Division 1, *supra*, we

driving under the influence of alcohol reports compiled by the arresting officer during the month in which defendant was arrested" because the defendant could not "point to any specific report which will cast doubt upon the officer's credibility" and the "file can have no relevance to the guilt or innocence of the defendant in this case" (punctuation omitted)).

[43] We note that OCGA § 9-11-26 of Georgia's *Civil* Practice Act provides that "a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Not only has this Code section not been argued, it appears to be wholly irrelevant to the issues in this appeal.

[44] *See* COURT OF APPEALS RULE 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."); *see also Johnson v. State*, 290 Ga. App. 255, 259 (1) (d) (659 SE2d 638) (2008) (deeming abandoned an argument that was unsupported by citation to authority).

reiterate that broad policy arguments should be directed toward the General Assembly and *not* to this Court.[45] As for the suggestion that White's subpoena is oppressive because it "requests an entire investigative file," the trial court determined that the subpoena was neither unreasonable nor oppressive because it "only sought documents related to the specific investigation forming the basis for the new charges against [White]," because "[c]ompliance would mean the production of a file the Sheriff has already compiled for evidentiary purposes and use in court," and because the "cost and time for production would be minimal." As a result, we cannot say that the trial court abused its discretion in this regard either.[46]

3. Finally, Whittle argues that the trial court's denial of his motion to quash the subpoena fails to recognize that White waived his right to subpoena the investigative file when presented with an opportunity to examine same during cross-examination

---

[45] *See supra* notes 31-33 and accompanying text.

[46] *See Blake*, 254 Ga. App. at 23 (2) (holding that trial court did not err in failing to quash subpoena in face of the argument that "the subpoena was unreasonable because [party] was already required to produce the same documents under the court's preliminary injunction order" and party had largely failed to comply with the order). *Cf. Kamensky v. S. Oxygen Supply Co.*, 127 Ga. App. 343, 344 (1) (193 SE2d 164) (1972) ("The irrelevancy of most of the subpoenaed matter being recognized, the basis for the trial judge's finding that the subpoena was unreasonable and oppressive is clearly established.").

at the probation-revocation hearing. But Whittle provides no citation to authority in support of this final enumeration of error and, thus, has abandoned it for appellate review.[47]

For all of the foregoing reasons, we affirm the lower court's denial of Whittle's motion to quash White's subpoena.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur*.

---

[47] *See, e.g.*, *Amaya v. State*, 308 Ga. App. 460, 463-64 (3), 464 (4) (708 SE2d 28) (2011) (deeming enumerations of error abandoned when unsupported by citations to authority); *see also* COURT OF APPEALS RULE 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned.").