**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 15, 2016**

# In the Court of Appeals of Georgia

A16A0666. GARY v. THE STATE.

BRANCH, Judge.

Following a bench trial at which the parties stipulated to the relevant facts, Brandon Lee Gary was convicted of a single count of criminal invasion of privacy, in violation of OCGA § 16-11-62 (2). Gary now appeals from the denial of his motion for a new trial, arguing that the conduct resulting in his conviction does not constitute a violation of the statute under which he was charged. Gary therefore contends that the trial court erred in denying his motion to quash the indictment and in finding that the evidence was sufficient to sustain his conviction. Gary further asserts that although he was not charged with violating OCGA § 16-11-62 (7), the trial court improperly considered the language of that subsection when finding that the evidence supported Gary's conviction. For reasons explained more fully below, we find that

the indictment failed to charge, and the evidence failed to show, that Gary engaged in conduct which constituted a violation of OCGA § 16-11-62 (2). We are therefore required to reverse Gary's conviction.

In this case, the evidence is uncontroverted, the parties agree as to all relevant facts, and no question exists regarding the credibility of witnesses. Thus, because the appeal presents only a question of law, we review both the appellate record and the trial court's order de novo. See *Burdett v. State*, 285 Ga. App. 571, 571 (646 SE2d 748) (2007); *Furcal-Peguero v. State*, 255 Ga. App. 729, 730 (566 SE2d 320) (2002).

The undisputed facts show that while employed at a Houston County Publix store, Gary aimed his cell-phone camera underneath the skirt of the victim and recorded video. Film from the store's security cameras showed that Gary aimed his camera underneath the victim's skirt at least four times as the victim walked and shopped in the aisles of the Publix. When questioned by police, Gary admitted to using his cell phone to take video recordings underneath the victim's skirt as she walked in two separate areas of the store.

A grand jury indicted Gary on a single count of "Unlawful Eavesdropping and Surveillance," with the indictment alleging that Gary's admitted conduct "did invade the privacy of the victim." Although the indictment did not identify the specific

2

statute Gary allegedly violated, the State has always maintained that the indictment charged Gary with violating OCGA § 16-11-62 (2). That statute, which is part of Georgia's Invasion of Privacy Act (OCGA § 16-11-60, et seq.), makes it illegal for "[a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view." Prior to trial, Gary moved to quash the indictment, arguing that because Gary filmed the victim as she walked and shopped in the aisles of a public store, the victim's activities were not occurring in a private place and therefore his conduct did not violate the statute. The trial court rejected that argument and denied the motion to quash, finding that the area of the victim's body underneath her skirt constituted a "private place" within the meaning of OCGA § 16-11-62 (2).

The case then proceeded to a bench trial, at which the State presented both the facts stipulated to by the parties and video from the store's security cameras, which showed Gary engaging in the conduct at issue. The trial court denied Gary's motion for a directed verdict, and in doing so, indicated that the court was reading OCGA §

3

16-11-62 (2) in conjunction with OCGA § 16-11-62 (7)[1] to find that Gary had committed a criminal invasion of privacy. After referencing subsection (7), the trial court concluded that "there's no more blatant invasion of privacy than to do what [Gary] did," found Gary guilty of the charged offense, and entered a judgment of conviction.

Following his conviction, Gary filed a motion for a new trial, again challenging the denial of his motion to quash the indictment and arguing that the evidence failed to show that he had engaged in any conduct which violated OCGA § 16-11-62 (2). The trial court denied that motion, and this appeal followed.

1. Each of Gary's first four enumerations of error turns on whether OCGA § 16-11-62 (2) criminalizes the conduct at issue. With respect to this question, both the State's argument and the trial court's holding focused on two propositions: (i) that Gary's conduct was patently offensive and (ii) that a woman walking and shopping in a public place has a reasonable expectation of privacy in the area of her body concealed by her clothing. We do not disagree with either of these propositions. Nor do we doubt that a woman whose body is surreptitiously photographed beneath her

---

[1] That statutory subsection provides that it shall be illegal "to commit any other acts of a nature similar to those set out in paragraphs (1) through (6) of this Code section which invade the privacy of another." OCGA § 16-11-62 (7).

4

clothing has suffered an invasion of privacy of some kind. The question before this Court, however, is not whether the defendant's conduct was offensive; it is not whether a person walking in a public place has a reasonable expectation of privacy as to certain areas of her body; and it is not whether the victim's privacy was violated. Rather, the only issue presented by this appeal is whether the defendant's conduct constitutes a *criminal* invasion of privacy, in violation of OCGA § 16-11-62 (2).

The answer to this question necessarily must begin with the language of OCGA § 16-11-62 (2) itself. See *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) ("[a] statute draws its meaning, of course, from its text"). And in determining the scope of conduct covered by OCGA § 16-11-62 (2), we presume that "the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (751 SE2d 337) (2013). To that end, we afford the statutory text "its plain and ordinary meaning," and we read that text in the "most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 172-173. See also OCGA § 1-3-1 (b) ("[i]n all interpretations of statutes, the ordinary signification shall be applied to all words"). Moreover, this Court is required to read a particular statute as a whole, considering specific words and phrases not in isolation, but in relation to each other. *Warren v. State*, 294 Ga. 589, 590 (755 SE2d 171) (2014). Additionally,

5

we must construe criminal statutes "strictly against the State . . . according to the natural and obvious import of their language," taking care not to extend the application of the law by "subtle and forced interpretations." *Perkins v. State*, 277 Ga. 323, 325-326 (588 SE2d 719) (2003) (citation and punctuation omitted). See also *Maxwell v. State*, 282 Ga. 22, 23 (644 SE2d 822) (2007) ("[a] criminal statute must be construed strictly against criminal liability and if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the [accused] must be adopted") (punctuation and footnote omitted).

As noted above, the statutory provision at issue makes it illegal "to observe, photograph, or record the activities of another which occur in any private place and out of public view." The dispute in this case centers on how we should read the term "private place." Specifically, the question is whether, reading OCGA § 16-11-62 as a whole, we may logically read "private place" as including a particular region of a person's body. At the time of Gary's alleged crime, the Invasion of Privacy Act defined "private place" as "*a place* where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." OCGA § 9-11-60 (3) (2011)

6

(emphasis supplied).[2] Given the statute's definition of "private place," the meaning of that term depends first and foremost on the meaning of "place."

When looking for the generally understood or common meaning of a particular word, courts most often look to dictionary definitions. See, e. g., *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014); *Warren*, 294 Ga. at 590-591. The Oxford English Dictionary defines "place" as including a "[r]oom, available space . . . A space that can be occupied. A particular part or region of space; a physical locality, a locale; a spot, a location." COMPACT OXFORD ENGLISH DICTIONARY, 937 (2d Ed. 1991). Webster's Dictionary likewise defines "place" as including :"Space; room . . . [;] A particular area or locality; region[;] the part of space occupied by a person or thing . . . ." WEBSTER'S NEW WORLD DICTIONARY, 1086-1087 (2d College Ed.) (1972). Both of these dictionaries also include a less-common definition of place relied on by the dissent – i.e., that "place"can be understood to mean "a particular part of a body or surface."

---

[2] Following Gary's indictment, the General Assembly amended the Invasion of Privacy Act, and the statute currently defines "private place" as "*a place* where there is a reasonable expectation of privacy." OCGA § 16-11-60 (3) (2015) (emphasis supplied).

Given these arguably conflicting definitions of "place," we must examine the context in which OCGA § 9-11-62 uses the term "private place." As our Supreme Court has explained, while "[t]he common and customary usages of the words [of the statute] are important, . . . so is their context," *Zaldivar v. Prickett*, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015) (citation and punctuation omitted), as "[w]ords, like people, are judged by the company they keep." *Hill v. Owens*, 292 Ga. 380, 383 (738 SE2d 56) (2013). Thus, in determining the meaning of "private place," we must read subsection (2) in its entirety and view that subsection in the context of OCGA § 16-11-62 as a whole. See *Zaldivar*, 297 Ga. at 591 (1). Read in its entirety, subsection (2) prohibits the observation or recording of the activities[3] of a person "*which occur in* any private place and out of public view." (Emphasis supplied.) The use of the phrase "which occur in" demonstrates that the term "private place" refers to the location of the person being observed or filmed – i.e., the statute refers to a person being observed or filmed while he or she is "*in* any private place." OCGA § 16-11-62 (2), therefore, criminalizes certain conduct as to an individual who is in a specific

---

[3] Neither the State's argument nor the trial court's holding addresses the statute's reference to "activities." Specifically, neither the trial court's ruling nor the State's brief identify any activities that were occurring underneath the victim's skirt and that were captured on Gary's surreptitious video. We note, however, that the record contains no evidence of any such activities.

8

physical location – i.e., a place which is out of public view and in which the individual could reasonably expect to be free from intrusion or surveillance.

Additionally, to understand the context in which "private place" appears, we must look at "other provisions of the same statute." *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014) (citation omitted). Here, subsection (2) of OCGA § 16-11-62 is not the only subsection of that statute to employ the term "private place." Subsection (1) prohibits the clandestine recording or transmission of a "private conversation" originating "*in any private place*," while subsection (3) makes it unlawful "*to go on or about* the premises of another or *any private place* . . . for the purpose of invading the privacy of others by eavesdropping upon their conversations or secretly observing their activities." (Emphasis supplied.) Given their use of the term "private place," these additional subsections of OCGA § 16-11-62

> especially [must] inform our consideration of what is meant by ["private place"] in subsection [(2)]. After all, 'there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.' *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (52 S. Ct. 607, 76 LEd 1204) (1932) (citation omitted).

9

*Zaldivar*, 297 Ga. at 592 (1). See also *Mathis v. Cannon*, 276 Ga. 16, 27 (4) (573 S.E.2d 376) (2002) (criticizing this Court for giving a single word different meanings within the same code section). Thus, because the term "private place" cannot have one meaning in subsection (2) and have a different meaning in subsections (1) and (3), our interpretation of that phrase must be one that will make sense when applied in all three of the relevant subsections. To interpret "private place," as the State asks us to do, as referring to a particular area of the human body, however, would render subsections (1) and (3) of the statute nonsensical. We decline to interpret the statute in this fashion. Instead, we find that when the term "private place," when viewed in context of the statute as a whole, does not refer to a specific area of a person's body. Rather, that term refers to some physical location, out of public view and in which an individual may reasonably expect to be safe from intrusion or surveillance – i.e., a place in which an individual has a reasonable expectation of privacy.

The foregoing analysis makes clear that OCGA § 16-11-62 (2) does not criminalize the observation or filming of an individual who is in a public place. In arguing for the opposite conclusion, the State fails to address critical statutory language. Specifically, the State's argument ignores that part of subsection (2) which refers to "activities . . . which occur in" a private place. Nor does the State consider

10

the use of the term "private place" in subsections (1) and (3) of the statute. Instead, the State's brief confines its statutory analysis to the term "private place" as used in subsection 2, and to the somewhat rhetorical question of whether an individual has a reasonable expectation of privacy in the parts of their body concealed by clothing. This limited analysis demonstrates the State's misunderstanding of the issue on appeal. The central premise of the State's argument (and the trial court's holding) is the idea that a person walking and shopping in a public place has a reasonable expectation of privacy that protects her against a stranger secretly making a video recording underneath her skirt. Again, this proposition is eminently reasonable. But we reiterate that whether an individual has a reasonable expectation of privacy in certain areas of his or her body is not the question currently before this Court. And while a law criminalizing such conduct is desirable, the plain and unambiguous language of OCGA § 16-11-62 (2) does not reach that conduct. Instead, that language makes clear that to convict an individual of violating OCGA § 16-11-62 (2), the State must allege and prove both that the accused observed or filmed the activities of the victim, and that those activities were occurring in a location which was out of public view and in which the victim could reasonably expect to be free from intrusion or surveillance. The activity recorded in this case was the victim's acts of walking and

11

shopping.[4] Given that this activity occurred in a grocery store *open to the public*, Gary did not record any activities of the victim that were occurring in a private place and out of public view. See *Pruitt v. State*, 227 Ga. 188, 190-191 (179 SE2d 339) (1971) ("a place open to the public" is not a "private place" within the meaning of the invasion of privacy statute) (construing the predecessor to OCGA § 9-11-60, et seq.).[5]

In light of the foregoing, the indictment in this case failed to allege, and the State failed to prove at trial, a material element of the crime of invasion of privacy, namely that the recorded activities of the victim occurred in a private place and out of public view. Accordingly, we find that the trial court erred both in denying Gary's motion to quash the indictment and in finding that there was sufficient evidence to convict Gary of violating OCGA § 16-11-62 (2).

2. Given our holding in Division 1, we need not address Gary's argument as to the trial court's alleged error in considering the language of OCGA § 16-11-62 (7) when finding Gary guilty of criminal invasion of privacy.

---

[4] In its brief, the State describes the recorded activities as the victim "getting some milk" and "getting an item off the shelf."

[5] Notably, the State does not dispute the fact that the victim was filmed while in a public place, acknowledging that "Publix was open to the public."

12

In closing, we note that it is regrettable that no law currently exists which criminalizes Gary's reprehensible conduct. Unfortunately, there is a gap in Georgia's criminal statutory scheme, in that our law does not reach all of the disturbing conduct that has been made possible by ever-advancing technology.[6] The remedy for this problem, however, lies with the General Assembly, not with this Court. Both our constitutional system of government and the law of this State prohibit the judicial branch from amending a statute by interpreting its language so as to change the otherwise plain and unambiguous provisions thereof. *Richardson v. State*, 276 Ga.

---

[6] The type of conduct in which Gary engaged is so prevalent that it has earned a name: "upskirting." See Zeronda, *Street Shootings: Covert Photography and Public Policy*, 63 VAND. L. REV. 1131, 1132-1133 (2010) ("upskirt photography involves taking pictures of women up their skirts"); Horstmann, *Protecting Traditional Privacy Rights in a Brave New Digital World: The Threat Posed by Cellular Phone-Cameras and What States Should Do to Stop It*, 111 PENN. ST. L. REV. 739, 739 n.1 ("'[u]pskirting' generally refers to the practice of taking unwanted pictures up a woman's skirt or dress"). Recognizing that existing criminal statutes do not generally reach this conduct, several jurisdictions have enacted voyeurism statutes, which criminalize the photographing or filming of private areas of an individual's body without that individual's consent and "under circumstances in which the individual has a reasonable expectation of privacy[.]" 18 USCA §1801 (West) (the "Video Voyeurism Act"). See also N. Y. Penal Law § 250.45 (McKinney) (punishing such conduct as unlawful surveillance in the second degree); Cal. Penal Code § 647 (j) (2) (West) (defining the crime of disorderly conduct to include acts such as those committed by Gary).

639, 640 (1) (581 SE2d 528) (2003). We are therefore constrained to reverse Gary's conviction.

*Judgment reversed. Doyle, C. J., Andrews, P. J., Dillard, Ray and Peterson, JJ., concur. Ellington, P. J., Phipps, P. J., and Mercier, J., dissent.*

A16A0666. GARY v. THE STATE.

MERCIER, Judge.

I respectfully dissent. At issue in this appeal is whether Gary's videotaping up the victim's skirt is a criminal invasion of privacy in violation of OCGA § 16-11-62 (2). The majority opinion answers this question in the negative.

OCGA § 16-11-62 (2) provides that it shall be unlawful for "[a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view." At the time the crime was committed, the legislature had defined "private place" as "a place where one is entitled reasonably to expect to be safe from casual or hostile intrusion or surveillance." OCGA § 16-11-60 (3) (2013).

In construing statutes, "we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 294 Ga.

170, 172-173 (1) (a) (751 SE2d 337) (2013). Where I part ways with the majority is in its evaluation of the commonly accepted meaning of the word "place."

While it is fitting for the majority to look to dictionary definitions for guidance on the meaning of the word, the majority has relied on only selective portions of definitions to support its analysis. The majority first cites to the Oxford English Dictionary, which pertinently defines "place" when used as a noun as a "[r]oom, available space . . . a space that can be occupied; A battlefield; A particular part or region of space; a physical locality, a locale; a spot, a location. . . a region or part of the earth's surface; A piece or plot of land; a holding; A particular part of or location in a book or document; *A particular area or spot in or on a larger body, structure, or surface; an area on the skin*; A dwelling, a house; a person's home; A particular spot or area inhabited or frequented by people; a city, a town, a village."[1] (emphasis supplied).

The majority next turns to Webster's Dictionary which defines "place" as "Space; room . . . [;] A particular are or locality; region[;] the part of space occupied by a person or thing . . . ." I have concerns with the majority's use of these

_____

[1]Oxford English Dictionary Third Edition, June 2006, accessed July 12, 2016, (http://www.oed.com/view/Entry/144864?rskey=hpIYuI&result=1#eid).

2

definitions. While I agree that is certainly one way in which "place" can be used, it is equally clear that "place" may also refer to a part of or location on one's body. The Oxford English Dictionary includes in its definition of "place," "[a] particular area or spot in or on a larger body, structure, or surface; an area on the skin." Merriam-Webster's Dictionary defines "place" pertinently as a "a particular region, center of population, or location; a building, part of a building, or area occupied as a home; *a particular part of a surface or body*."

Regardless of what dictionary definition is used, the plain meaning of the word "place" is susceptible to many varied meanings. To read the statute as applying to only one, and one chosen by the judiciary to the exclusion of all others, is troubling. This is particularly true when the definitions are not mutually exclusive, and the statute has no limiting language.

In interpreting statutes we must "presume that the General Assembly meant what it said and said what it meant," *In re L.T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014). Accordingly, as the word "place" is commonly understood as both a location in which a person may be found and as apart of or location on one's body, the term "private place," as used in the statute refers to a physical location or an area

of an individual's body out of public view and in which an individual can reasonably expect to be safe from casual or hostile intrusion or surveillance.

The majority posits next that because this statute makes it unlawful to "observe, photograph, or record the activities of another which occur in any private place and out of public view," the statute refers to only the actual location of the person being observed or filmed. This conclusion only follows from the majority's initial determination about the meaning of the term "private place." Because I read "private place" to refer to a physical location or an area of an individual's body that is out of public view, then the statute should be read to refer to the location of the activities being filmed. In essence, the statute refers to the filming or observing of the activities of another which are in any private place and out of public view.

Therefore, I would find that the plain and unambiguous language of OCGA § 16-1-62 (2) criminalizes the act of filming up a woman's skirt without her consent. To convict an individual of violating OCGA § 16-1-62 (2) requires both that the accused observed or filmed the activities of the victim, and that those activities occurred in a location or portion of an individual's body that were out of public view and in which the victim had a reasonable expectation of privacy. The activity recorded in this case was the activity of the private areas of the victim's body covered

4

by clothing while she walked and shopped. As the victim's genital area was not exposed to the public, it was out of public view and the victim had a reasonable expectation of privacy in the area under her skirt. Thus, I would affirm the trial court's denial of Gary's motion to quash the indictment, and would find that there was sufficient evidence to convict Gary of violating OCGA § 16-1-62 (2).

The majority contends that interpreting "private place" to refer to a particular area of the human body would render subsections (1) and (3) of the statute mere surplusage.[2] This is erroneous, as I interpret the term "private place" to refer to physical location *or* an area of an individual's body out of public view, which is within the plain meaning of "place." Both subsections of OCGA § 16-11-62 can still be read in harmony with subsection (2), because they are not mutually exclusive, and there is no contradiction or exclusion.

The majority refers to a "gap in Georgia's criminal statutory scheme," yet I would argue that no such gap exists. Rather, the majority has in fact created one by

---

[2]The subsections read in relevant part "(1) Any person in a clandestine manner intentionally to overhear, transmit, or record or attempt to overhear, transmit, or record the private conversation of another which shall originate in any private place. . . (3) Any person to go on or about the premises of another or any private place, except as otherwise provided by law, for the purpose of invading the privacy of others by eavesdropping upon their conversations or secretly observing their activities."

5

judicial fiat. To interpret the statute to make Gary's conduct illegal does not restrict or broaden the statute in any way, but merely comports with the common meaning and understanding of the word "place" in the English language. Indeed, "private place" is a phrase heard daily in courts across this state, as judges, prosecutors, defense attorneys, psychologists, detectives, and children, to name only a few, use it to describe incidents of sexual abuse.[3] The majority thus engages in an examination of language as it assumes it to be, as opposed to as it actually is.

We have decades of Fourth Amendment jurisprudence setting forth limitations on law enforcement's ability to merely pat down an alleged suspect on top of their

---

[3]Brief research indicates that across the state of Georgia individuals have been arrested and indicted for the same or similar conduct alleged in this case. Thus, the commonly understood meaning of the phrase "private place" has until today allowed for no gap in our privacy laws. See Atlanta Journal-Constitution "Cops: Man takes pictures up woman's skirt in Target" (http://www.ajc.com/news/news/local/cops-man-takes-pictures-up-womans-skirt-in-targe-1/nQXrR/); Atlanta Journal-Constitution "Former Milton store worker accused of taking pictures up customers' skirts" (http://www.ajc.com/news/news/local/former-milton-store-worker-accused-taking-pictures/nqyCS/); Atlanta Journal-Constitution "Police: Pharmacist caught using phone to peer under customer's skirt" (http://www.ajc.com/news/news/police-pharmacist-caught-using-phone-to-peer-under/ngkCS/); The Brookhaven Post "Brookhaven Police seek man suspected of taking pictures up woman's skirt at Publix" (http://brookhavenpost.co/brookhaven-police-seek-man-suspected-of-taking-pictures-up-womans-skirt-at-publix/38042/).

clothing to protect the sacrosanct bodily privacy of even those who are accused of violating criminal laws. But today, with the stroke of a pen, we are in effect negating the privacy protections from the intrusions of fellow citizens afforded to every person in this State because one definition of "place" is afforded more weight than another.

For these reasons I respectfully dissent.  I am authorized to state that Presiding Judge Ellington and Presiding Judge Phipps join in this dissent.

7