**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 28, 2024**

# In the Court of Appeals of Georgia

A24A0640. CALVERT v. CALVERT.
A24A0641. CALVERT v. CALVERT.

BARNES, Presiding Judge.

These related appeals arise out of a petition seeking modification of custody and child support for three minor children born to Faith M. Calvert ("the mother") and Jerome L. Calvert ("the father"). In Case No. A24A0640, the father appeals from a trial court order finding him in contempt for failure to pay child support as required by the couple's divorce decree; awarding the mother attorney fees; and requiring the father to pay the child support arrearage and the attorney fee award. The father also appeals that part of the final order that denied his motion for reconsideration of the contempt order and that granted the mother's second motion for contempt (based on the father's failure to comply with the earlier contempt order.) In Case No.

A24A0641, the mother appeals from an order granting the father's post-judgment motion for attorney fees. For reasons explained more fully below, in Case No. A24A0640 we affirm the contempt order and that part of the final order related to the father's contempt. In case No. A24A0641, however, we vacate the order granting the father's attorney fees motion and remand for further proceedings consistent with this opinion.

The record shows that the parties married in 2008 and were divorced pursuant to a final judgment and decree of divorce entered in December 2013. The divorce decree granted the mother primary physical custody of the couple's only minor child, C. F. C. (born in 2008), and required the father to pay $225 per month in child support. Several months after the divorce, the parties reconciled and resumed living together as husband and wife, although they never remarried. During the time they lived together, the parties had two more children, C. L. C. (born in 2014), and C. J. C. (born in 2016). The mother and father separated a second time in January 2020, and all three children remained with the mother. One year later, the oldest child went to live with the father and in April 2021, the father filed a petition seeking legitimation of the two younger children; joint legal and physical custody of and visitation with the

two younger children; primary physical custody of the oldest child; and modification of his child support obligation with respect to the oldest child. The mother counterclaimed for joint legal custody and primary physical custody of all three children. She also sought child support for all three children and an award of attorney fees under OCGA § 19-6-2.

Several months after the father filed his petition, the mother filed a motion for contempt based on the father's failure to pay child support as ordered by the divorce decree. She also sought attorney fees for the cost of bringing the contempt motion. The father, in turn, moved for the appointment of a guardian ad litem "to render an opinion as to what is in the best interest of the children with respect to primary legal and physical custody."

At the temporary hearing, the trial court heard evidence regarding the mother's contempt motion for the father's failure to pay child support as ordered by the divorce decree. With respect to that issue, the father testified that the parties lived separately for only three months immediately following their 2013 divorce, and that during each of those months, he paid the court-ordered support. Once the parties resumed living together, however, the father made no additional support payments, explaining that

the mother never asked for any. The father acknowledged, however, that since the parties separated a second time in January 2020, he had made none of the court-ordered child support payments for the oldest child; had made no contribution to the financial support of the two younger children; and had not paid any portion of the oldest child's uninsured medical expenses, although the divorce decree required him to do so. The father further testified that while the parties lived together, he worked 20 hours a week, the parties had a joint checking account and "split[] the bills," and his financial contributions meant he supported the oldest child while she lived with both parents. The father offered no testimony, however, as to what portion of his income (if any) he placed in the parties' joint checking account and he presented no other evidence, such as bank statements, showing what financial support he provided to the household. Nor did the father testify that he provided significant services to the household, such as child care, cleaning, or food preparation.

The mother testified that the parties lived apart for approximately six months following their divorce and during that time, the father paid a total of $100 in child support. She disputed the father's testimony that the parties "split the bills" during the time they lived together and stated that following the couple's divorce, the father

never contributed money to cover any of the household expenses. Instead, the mother testified that her salary paid for "everything," including the mortgage, car payments, insurance, and utilities. Finally, the children's maternal grandmother offered unrefuted testimony that throughout the children's lives, she had provided child care for the family on a daily basis.

Following the hearing, the trial court entered an order that, among other things, granted the motion for appointment of a guardian ad litem; found the father in contempt for failure to pay child support as required by the divorce decree; and awarded the mother $21,825 in past due child support and $4,315 in attorney fees.

In December 2022, the guardian ad litem sent a written report to the parties in which he recommended that the father be given primary physical custody of all three children. Six months later, in June 2023, the trial court held a final hearing, at which it allowed the father to move for reconsideration of the prior order finding him in contempt for failure to pay child support as required by the divorce decree and awarding the mother past due child support and attorney fees.

Following the hearing, the trial court entered a final order granting the parents joint legal custody, granting the father primary physical custody of all three children, and

requiring the the mother to pay child support. Additionally, the order denied the father's motion for reconsideration of the prior order finding him in contempt and awarding the mother past due child support and attorney fees. And the order found that the father remained in contempt for failure to pay the attorney fee award in full and for failure to make any payments on the past due child support.

Almost two weeks after entry of the final judgment, the father filed a motion seeking an award of attorney fees pursuant to OCGA § 9-15-14 (a), OCGA § 19-9-3 (g), and OCGA § 19-6-15 (k) (5). In support of that motion, the father's attorney submitted an affidavit authenticating the father's legal bills, which showed the father had been charged $13,405 in fees and costs related to the temporary hearing, the court-ordered mediation, and the final hearing. Following a hearing at which it heard argument from counsel, the trial court entered an order awarding the father $9,000 of the $13,405 in attorney fees he had requested. Specifically, the trial court found that the father was entitled to fees under OCGA §§ 19-9-3 (g) and 19-6-15 (k) (5) because he was the prevailing party with respect to his claims for custody and "upward modification of child support." The court further found that fees resulting from the mother's defense of the father's claim for custody and her counterclaim for the same

were warranted under OCGA § 9-15-14 (a), holding that the mother's pursuit of those claims was without merit.

Following entry of the final order, the father filed an application for discretionary appeal as to the contempt order and the denial of his motion for reconsideration of that order.[1] We granted that application, and the father then filed the appeal in Case No. A24A0640. We also granted the mother's application for discretionary appeal from the trial court order awarding the father attorney fees. The mother then filed the appeal in Case No. A24A0641.

*Case No. A24A0640*

1. In this case, the father appeals the order finding him in contempt for failure to pay child support as ordered by the divorce decree and requiring him to pay the mother past due support. A trial court is vested with significant discretion to determine "both whether the court's orders have been violated and how such infringements should be treated." (Citation and punctuation omitted). *Wall v. James*, 358 Ga. App. 121, 123 (1) (853 SE2d 881) (2021). Thus, where the court finds a willful

---

[1] The mother filed a direct appeal from the final order, challenging both the custody and the child support awards. We affirmed those parts of the final order in *Calvert v. Calvert*, 372 Ga. App. 153 (904 SE2d 1) (2024).

contempt of the divorce decree, it has "broad discretion to enforce the letter and spirit of the decree, but the court must do so without modifying the original judgment that is being enforced." (Citation and punctuation omitted.) *Froeilich v. Froeilich*, 297 Ga. 551, 555 (4) (775 SE2d 534) (2015). "[G]iven the wide latitude afforded to the trial court, we will affirm a contempt ruling if there is any evidence in the record to support it," bearing in mind that as the fact finder, the trial court has the "duty to reconcile seemingly conflicting evidence and to weigh the credibility of witnesses." (Citations and punctuation omitted.) *Wall*, 358 Ga. App. at 123 (1).

The rule generally applicable to the child support provisions of a divorce decree is that such provisions may be modified only by a court ruling on a modification petition. *Skinner v. Skinner*, 252 Ga. 512, 513 (2) (314 SE2d 897) (1984). Thus, modifications agreed to by the parties but not sanctioned by a court are insufficient to relieve a payor of the obligations set forth in the decree. Id. (an order modifying a child support award may not "be given retroactive application," but instead may operate "only prospectively"). Under this rule, any agreement reached by the parties suspending the father's child support obligations would be considered invalid.

As the father points out, however, Georgia has recognized an "exception to the general rule, which . . . provides that the child support payor[] may be given credit if equity would so dictate under the particular circumstances involved, provided that such an allowance would not do an injustice to the child support payee." (Citation and punctuation omitted.) *Brown v. Georgia Dept. of Human Resources*, 263 Ga. 53, 54 (1) (428 SE2d 81) (1993). This exception may apply where "the support required under the decree has been provided in another form by the [payor]," *Skinner*, 252 Ga. at 515 (2), including where the "payee consents to payor's voluntary expenditures as an alternative to payor's child support obligation[.]" *Brown*, 263 Ga. at 54 (1). As the *Skinner* court explained, in a contempt action based on a father's failure to pay child support, "credit for the father's voluntary expenditures consented to by the mother as alternatives to child support . . . may be appropriate so that the father is not required to pay child support twice when there is no resulting unfairness to the mother or children." 252 Ga. at 514 (2). See also *Jackson v. Sanders*, 333 Ga. App. 544, 555-556 (3) (773 SE2d 835) (2015) (father was not in contempt of divorce decree where, instead of paying child support directly to the mother he paid an equivalent amount directly to the child's private school, and he did so with the consent of the mother).

9

Here, the father argues that during the time they lived together following their divorce, the parties had an agreement that he would make a financial contribution to the overall household finances in lieu of paying child support. The father further asserts that because his financial contributions were used to support the oldest child, the trial court erred in refusing to apply the equitable exception. He also contends that the application of this equitable exception requires that we reverse the trial court order finding him in contempt of the divorce decree and requiring him to pay past-due child support. We disagree.

As the party moving for contempt, the mother bore the initial burden of demonstrating the father's failure to pay support in accordance with the divorce decree. *Harvey v. Lindsay*, 251 Ga. App. 387, 392 (3) (554 SE2d 523) (2001) ("The burden of establishing the fact of contempt is on the party asserting it.") Once the mother met this burden, the father was required to demonstrate that his failure to comply with the decree was excused — i.e. that the mother consented to his contribution to the household finances in lieu of child support. See *Wright v. Wright*, 367 Ga. App. 15, 18-19 (1) (884 SE2d 610) (2023) (party seeking to avoid contempt for failure to comply with divorce decree bears the burden of proving his

10

non-performance is excused under the circumstances of the case). In this case, the evidence showed that after they resumed living together, the parties did not come to an agreement regarding whether the father should continue to make child support payments. Instead, the father assumed he no longer had that obligation, explaining that the mother never asked for any such payments. The mother acknowledged that she never questioned the father about his failure to make support payments, explaining that she avoided filing a contempt motion because the father could be so "difficult" to deal with. Despite her failure to mention the payments, however, the mother still saw the father as responsible for the court-ordered child support.

More important than a lack of an agreement between the parties, however, is the lack of evidence showing that the father made any financial contributions to the household in lieu of child support. Although the father testified that the parties had a joint checking account when they lived together, he offered no testimony about what portion of his paychecks – if any – went into that account. Nor did he state that he contributed a monthly amount equal to or greater than his child support obligation. Additionally, the father failed to introduce any other evidence – such as bank statements or paycheck stubs showing direct deposits — to demonstrate that he

11

contributed money to assist with household expenses. Thus, the father failed to refute the mother's testimony that while the parties lived together, her income paid for all expenses associated with the household and the children.

Given this evidence, we cannot say that the trial court abused its discretion in holding the father in contempt of the divorce decree. See *Henderson v. Henderson*, 166 Ga. App. 412, 413 (304 SE2d 517) (1983) (affirming a trial court's finding that father was in contempt of support provisions of a divorce decree where some evidence supported the trial court's conclusion that the case did not fall within an equitable exception to the rule that the parties may not modify court-ordered support requirements). See also *Wall*, 358 Ga. App. at 123 (1) (in a contempt proceeding the trial court sits as the fact finder, and it is "the trial court's duty to reconcile seemingly conflicting evidence and to weigh the credibility of witnesses") (citation and punctuation omitted). Accordingly, we affirm the trial court's order holding the father in contempt for failure to pay child support and requiring him to pay the past-due amount.

*Case No. A24A0641*

In this case, the mother appeals from the trial court's order awarding the father attorney fees under OCGA § 9-15-14 (a), OCGA § 19-9-3 (g), and OCGA § 19-6-15 (k) (5). The mother argues that once she filed her notice of appeal from the final order, the trial court lacked jurisdiction to rule on the father's attorney fee motion. She further contends that the evidence was insufficient to support an award of attorney fees under OCGA § 9-15-14 (a) and that the trial court's order lacks the findings of fact required by that statute. Finally, the mother claims that, under the circumstances of this case, a fee award was unavailable under either OCGA § 19-9-3 (g) or OCGA § 19-6-15 (k) (5). We address each of these arguments below.

2. *Jurisdiction.*

Under Georgia law, a trial court is without "jurisdiction to modify or alter" a final judgment where an appeal of that judgment is pending. (Citation and punctuation omitted.) *Lawyers Title Insurance Corp. v. Griffin*, 302 Ga. 726, 729 (1) (691 SE2d 633) (2010). See also *Atkins v. Estate of Callaway*, 329 Ga. App. 8, 9 (1) (763 SE2d 369) (2014) (physical precedent only) ("the superior court is without authority to alter the judgment on appeal"); OCGA § 5-6-46 (a). Relying on the foregoing principle, the mother argues that after she filed her notice of appeal from the final judgment on

August 4, 2023, the trial court was without jurisdiction to rule on the attorney fee motion.[2] This argument is unsupported by relevant law.

Our precedent makes clear that an appeal from a final order of judgment does not deprive a trial court of jurisdiction to rule on a post-judgment motion for attorney fees under OCGA § 9-15-14. See *Rolleston v. Huie*, 198 Ga. App. 49, 52 (4) (400 SE2d 349) (1990) (noting that a motion for attorney fees under OCGA § 9-15-14 "is made pursuant to an entirely separate and distinct post-judgment procedure"), overruled in part on other grounds, *Sewell v. Cancel*, 295 Ga. 235, 239, n. 2 (759 SE2d 485) (2014). Additionally, our Supreme Court has held that a trial court has jurisdiction to enter a post-judgment award of fees under OCGA §§ 19-9 3 and 19-6-15. See *Avren v. Garten*, 289 Ga. 186, 190-191 (6) (710 SE2d 130) (2011) (holding that in a case arising out of petitions for modification of child support and child custody, the trial court had jurisdiction to enter an award of attorney fees while the mother's application for discretionary appeal was pending). The rationale underlying this rule is that a post-judgment order of attorney fees does not represent an amendment of the

---

[2] The amended final judgment was entered on July 6, 2023. On July 18, 2023 the father filed his motion for attorney fees. The mother filed her notice of appeal on August 4, and the trial court issued the attorney fee order on September 7.

final order under appeal. And, as the cases relied on by the mother demonstrate, during the pendency of an appeal a trial court is deprived of jurisdiction only over the judgment that is being appealed. See *Atkins*, 329 Ga. App. at 9 (1). See also *Rollins v. Rollins*, 300 Ga. 485, 486 (1) (796 SE2d 721) (2017) (where a notice of appeal has been filed, the trial court is thereafter "deprived of the power to affect *the judgment appealed*") (citation and punctuation omitted; emphasis supplied); *Avren*, 289 Ga. at 190-191 (6) ("the filing of an application to appeal or a notice of appeal deprives the trial court of jurisdiction to take action in the case that would affect the judgment on appeal, but it does not deprive the trial court of entering an order that might be affected by the outcome of the appeal") (citation and punctuation omitted). In this case, therefore, the filing of a direct appeal from the final judgment in the underlying case did not deprive the trial court of jurisdiction to rule on the attorney fee motion.

3. *Award of fees under OCGA § 9-15-14 (a).*

Georgia's frivolous litigation statute, provides, in relevant part:

In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be

15

reasonably believed that a court would accept the asserted claim, defense, or other position.

OCGA § 9-15-14 (a).

"We will affirm a trial court's ruling on a claim for OCGA § 9-15-14 (a) attorney fees if there is any evidence to support the ruling." *Bennett v. McClam*, 358 Ga. App. 550, 551 (2) (855 SE2d 744) (2021).

(a) *Conduct supporting the award.*

To permit meaningful appellate review of a fee award under OCGA § 9-15-14, the trial court order making that award must contain factual findings that identify the conduct warranting the award. *Belcher v. Belcher*, 298 Ga. 333, 335 (782 SE2d 2) (2016) ("If the court awards attorney fees under OCGA § 9-15-14, it must make express findings specifying the abusive conduct for which the award is made.") (citation and punctuation omitted); *Williams v. Williams*, 362 Ga. App. 839, 846 (4) (870 SE2d 462) (2022) (a trial court order awarding fees and expenses under OCGA § 9-15-14 "cannot be too vague and conclusory") (citation and punctuation omitted). Thus, an order is insufficient to support an award of OCGA § 9-15-14 attorney fees if it fails to cite "examples of the specific conduct" authorizing the award and instead makes only

"conclusory findings that there was 'an absence of justiciable issue of law or fact[.]'"

*Bailey v. Maner Builders Supplied Co.*, 348 Ga. App. 882, 884 (2) (825 SE2d 377) (2019).

Relying on the foregoing law, the mother argues that an award of fees under OCGA § 9-15-14 (a) is not supported by the record, which fails to show that her request for custody of the two younger children (and her defense of the father's claim for custody of those children) was without merit. She further contends that regardless of the merits of her defense, the trial court's order is insufficient to support a fee award because it failed to make factual findings to support its summary conclusion that her claim for custody was devoid of a justiciable issue of law or fact. We agree with the mother that the trial court order is insufficient to support an award of attorney fees under OCGA § 9-15-14 (a).

With respect to its decision to award attorney fees under OCGA § 9-15-14 (a), the trial court stated:

> Without addressing the specific evidence at trial, this Court finds the [mother's] counterclaim for custody as well as her defense of [the father's] claim for custody was completely absent of any viable, significant or justiciable issue of fact and that said position proffered by the [mother] with regard to her being awarded custody was not

meritorious nor capable of being reasonably believed and, this Court does not accept said claim for custody nor defense of [the father's] claim for custody. The evidence addressed at trial, in addition to a 7-month-old recommendation of the Guardian Ad Litem (which was again presented by the Guardian Ad Litem), clearly indicated that it was in the best interests of the children that they be placed in the permanent physical custody of the [father].

Notably, the trial court's summary conclusions that the mother's pursuit of custody and her defense of the father's custody claim were devoid of merit are not supported by any specific factual findings. Rather, the court referred only to "the evidence addressed at trial" and the report of the guardian ad litem, which the mother had received approximately six months in advance of trial. The guardian ad litem's report, standing alone, however, is not determinative of a custody case. *Ezunu v. Moultrie*, 334 Ga. App. 270, 271-272 (1) (779 SE2d 44) (2015) ("Although a trial court may consider the recommendations of a guardian ad litem, such recommendations are not a substitute for the trial court's independent discretion and judgment.") (citation, punctuation, and footnote omitted.) See also OCGA § 19-9-3 (a) (3) (providing a non-exhaustive list of 17 factors to be considered by trial court in determining custody

of a child). Moreover, the trial court's summary conclusion as to the merits of the mother's custody claim fails to acknowledge that she was awarded preliminary custody of the two younger children following the temporary hearing. Nor does the order explain why, despite this fact, the mother should have dropped her claim for permanent custody of those children. Thus, we find that the trial court's order is insufficient to support an award of attorney fees under OCGA § 9-15-14 (a). See *Bailey*, 348 Ga. App. at 884 (2) ("conclusory finding[] that there was an absence of justiciable issue of law or fact" was insufficient to support an award of OCGA § 9-15-14 attorney fees) (punctuation omitted); *Adams v. Pinetree Trail Enterprises*, 347 Ga. App. 697, 699 (1) (820 SE2d 735) (2018) (trial court's summary conclusion that "the [p]laintiff's claims were frivolous, lacked substantial justification and were unsupported by law and fact" were "entirely too vague and conclusory to permit any meaningful appellate review of the award of attorney fees and expenses of litigation under OCGA§ 9-15-14.") (citation and punctuation omitted); *McClure v. McCurry*, 329 Ga. App. 342, 344 (2) (765 SE2d 30) (2014) (summary findings that the plaintiff's claims "lacked substantial justification" and were "substantially baseless and frivolous" were insufficient to support an award of fees under OCGA § 9-15-14 where

19

the order did not contain "any factual finding(s) that underlay those conclusions") (punctuation omitted).

(b) *The reasonableness and lump-sum nature of the fees awarded.*

An award of fees under OCGA § 9-15-14 "must be supported by sufficient proof of the actual costs and the reasonableness of those costs and the trial court must limit the fees award to those fees incurred because of the sanctionable conduct." (Citation and punctuation omitted.) *Ernest v. Moffa*, 359 Ga. App. 678, 687 (5) (b) (859 SE2d 834) (2021). See also *Belcher v. Belcher*, 346 Ga. App. 141, 146 (3) (816 SE2d 82) (2018)("in cases involving OCGA § 9-15-14 (a), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct") (citation and punctuation omitted). "Lump sum or unapportioned attorney fees awards are not permitted in Georgia." (Citation and punctuation omitted.) *Belcher*, 346 Ga. App. at 147 (3).

Here, the mother challenges the amount of fees awarded, claiming there was no evidence of their reasonableness and that the trial court failed to limit the fee award to her conduct in pursuing custody of the two younger children. We find that while

some evidence supports the reasonableness of the amount awarded, that amount represents an impermissible lump sum.

To support his attorney fee motion, the father submitted an affidavit of his attorney with billing statements attached. The affidavit stated that the attached billing statements were "true and correct," made from the attorney's "personal knowledge," and that the attorney was "competent to testify." The billing statements listed each of the pleadings filed by the father in the case, and the amount of time the attorney had spent preparing each of those pleadings. The statements then listed the time the attorney had spent preparing for and participating in the temporary hearing, the court-ordered mediation of the case, and the final hearing. The statements reflected that the total number of hours spent by the father's attorney on these services was 38.3 hours, and that the attorney charged $350 per hour. The statement also noted that the attorney had not included charges "for letters and emails." Based on the affidavit and billing statements, the father requested a total of $13,405 in attorney fees.

At the hearing on the attorney fee motion, counsel stated in his place that he had been practicing law for 47 years, that he charged $350 an hour, and that in light

of his 26 months representing the father, the amount of fees requested was reasonable. Based on this evidence, the trial court awarded the Father $9,000 in attorney fees. In doing so, the court summarily rejected the mother's claim that the father had failed to demonstrate the reasonableness of the fees he sought, noting that counsel was not seeking reimbursement for all of the fees he incurred and that the amount sought by the father was less than the fees requested by the mother.

We find that there were some evidence to demonstrate that the fees requested by the husband were reasonable. Specifically, the statements of the father's attorney as to his experience, the reasonableness of his rate, the length of the litigation, and the decision to limit the amount of fees the father was seeking constituted some evidence to support the reasonableness of the $9,000 award. See *Campbell v. Beak*, 256 Ga. App. 493, 498 (5) (568 SE2d 801) (2002) (party seeking attorney fees proved their reasonableness where his attorney made statements to the court "that his fees were more than reasonable, given the complexity of the case, his education, and his experience").

We further find, however, that the award of $9,000 constitutes an impermissible lump-sum award — i.e., "nothing in the trial court's order explains

how the [$9,000 in] fees relate[s] to" the mother's pursuit of her custody claim and/or her defense against the father's claim for custody. *Spirnak v. Meadows*, 355 Ga. App. 857, 873 (7) (d) (844 SE2d 482) (2020). Furthermore, the billing statements and affidavits submitted by the father's attorney failed to identify what portion of the attorney's time was related to defending against the mother's custody claim. For example, with respect to the temporary hearing, the attorney did not identify what portion of his time was devoted to the contempt motion heard at that hearing, what amount was devoted to the custody issue, and how much time was devoted to the question of child support.[3] Nor did he identify what portion of his time with respect to mediation and the final hearing was related to child custody, as opposed to child support. Thus, while "the trial court's award of [$9,000] may have been reasonable, [that] order[], on its face fails to show the complex decision-making process necessarily involved in [the trial court] reaching a particular dollar figure and fails to articulate why the amount awarded was [$9,000], as opposed to any other amount." (Citation and punctuation omitted.) *Butler v. Lee*, 336 Ga. App. 102, 106 (2) (783 SE2d 704) (2016).

---

[3] The trial court found that the father was not entitled to recover under OCGA § 9-15-14 (a) any fees associated with litigating the issue of child support.

23

Given the lack of factual findings supporting the trial court's legal conclusion regarding the merits (or lack thereof) of the mother's custody claim, and because the amount awarded represents an impermissible lump-sum, we must vacate the trial court's order and remand for reconsideration of the award. See *Thrasher-Starobin v. Starobin*, 299 Ga. 12, 13 (785 SE2d 302) (2016) ("if a trial court fails to make findings of fact sufficient to support an award of attorney fees under" OCGA § 9-15-14, "the case must be remanded to the trial court for an explanation of the statutory basis for the award and any findings necessary to support it") (citation and punctuation omitted); *Fedina v. Larichev*, 322 Ga. App. 76, 81 (5) (744 SE2d 72) (2013) (vacating attorney fee award and remanding for entry of a new award where the order did "not indicate how the court [limited] its award to fees generated based on [the party's] sanctionable conduct").

4. *Award of fees under OCGA § 19-9-3 (g).*

The trial court entered its amended final order in the custody case on July 6, 2023. The father thereafter filed his motion for attorney fees on July 18, 2023. Given that the father failed to request attorney fees before the final hearing, the mother

argues that the trial court erred in relying on OCGA § 19-9-3 (g) to support the attorney fees award. We agree.

The statute at issue provides, in relevant part, that the judge hearing a custody case:

> may order reasonable attorney's fees and expenses of litigation, experts, and the child's guardian ad litem and other costs of the child custody action and pretrial proceedings to be paid by the parties in proportions and at times determined by the judge. Attorney's fees may be awarded *at both the temporary hearing and the final hearing. A final judgment shall include* the amount granted, whether the grant is in full or on account, which may be enforced by attachment for contempt of court or by writ of fieri facias . . . .

(Emphasis supplied.) OCGA § 19-9-3 (g).

Relying on the above-emphasized language, the mother argues that OCGA § 19-9-3 (g) does not permit a post-judgment motion for, or a post-judgment award of, attorney fees. Whether the statute permits a trial court to consider an award of attorney fees following entry of a final judgment represents a question of first impression. To answer that question, we "must begin with the language of [OCGA § 19-9-3 (g)] itself." *Gary v. State*, 338 Ga. App. 403, 405 (1) (790 SE2d 150) (2016),

citing *Chan v. Ellis*, 296 Ga. 838, 839 (770 SE2d 851) (2015) ("A statute draws its meaning, of course, from its text.") And when we interpret statutory language,

> we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meeting, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). "Moreover, this Court is required to read a particular statute as a whole, considering specific words and phrases not in isolation, but in relation to each other." *Gary*, 338 Ga. App. at 405 (1). "Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (Citation and punctuation omitted.) *Deal*, 294 Ga. at 173 (1) (a).

The statutory language at issue here provides that attorney fees may be awarded in a custody case "at" the temporary and/or final hearing. This phrasing leads to the conclusion that the request for such fees must be made no later than the final hearing. And with respect to the requirement that any fee award be included in a final

26

judgment, we note that OCGA § 19-9-3 applies only to those "cases in which the custody of any child is at issue between the parents[.]" OCGA § 19-9-3 (a) (1). Given that fact, the final judgment referenced in subsection (g) would necessarily be the final judgment in the underlying custody case.

This conclusion is reinforced by our published decisions finding that a trial court may enter an attorney fees award under OCGA § 19-9-3 following entry of a custody order provided the custody order specifically reserved the issue of attorney fees. See, e.g., *Hooper v. Townsend*, 362 Ga. App. 532, 534 (868 SE2d 286) (2022) (following entry of its custody order, which specifically reserved ruling on the father's pending attorney fee motion, trial court entered an award of attorney fees under OCGA § 19-9-3 (g)); *Gordon v. Abrahams*, 330 Ga. App. 795, 798-799 (3) (a) (769 SE2d 544) (2015) (following entry of an order awarding father custody of the child, the trial court had jurisdiction to enter an award of attorney fees to father, as father's request for fees was pending at the time of the custody decision and the custody order reserved the issue of fees). Notably, however, custody orders that specifically reserve ruling on a pending motion for attorney fees do not constitute a final order. *Gordon*, 330 Ga. App. at 799 (3) (a) ("an order adjudicating fewer than all the claims is not

final"); *Forrister v. Manis Lumber Co.*, 232 Ga. App. 370, 371 (1) (501 SE2d 606) (1998) (an order is final and appealable "when it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court.") (citation and punctuation omitted).

Thus, we find that an award of attorney fees under OCGA § 19-9-3 (g) is available only where: (i) a request for attorney fees is made no later than the final hearing; and (ii) the award of such fees is included in an order that constitutes the final judgment in the case. Given that the father failed to request attorney fees until almost two weeks following entry of the final judgment in the custody case, the trial court erred in finding that OCGA § 19-9-3 (g) could serve as a basis for the fee award.

5. *Award of fees under OCGA § 19-6-15 (k) (5).*

OCGA § 19-6-15 provides, in relevant part, "[i]n proceedings for the modification of a child support award pursuant to the provisions of this Code section, the court may award attorney's fees, costs, and expenses of litigation to the prevailing party as the interests of justice may require." OCGA § 19-6-15 (k) (5). Here, the trial court found that the father was entitled to an award of attorney fees under the statute

28

because he "was clearly the 'prevailing party' in his claim for upward modification of child support." (Emphasis omitted.) On appeal, the mother contends that under the circumstances of this case, an award of fees was not available under OCGA § 19-6-15 (k) (5). For reasons explained more fully below, we find that, at best, the father may only recover under this statute for attorney fees incurred in obtaining a modification of the support award as to the oldest child.

By definition, a modification action may be initiated only with respect to an existing child support award. Thus, the statute requires that a modification petition be based on an allegation that there has been "a substantial change in either parent's income and financial status" or that there has been a substantial change in "the needs of the child" that is the subject of the existing support order. OCGA § 19-6-15 (k) (1). See also *Wetherington v. Wetherington*, 291 Ga. 722, 725 (2) (a) (732 SE2d 433) (2012) ("the showing of a change in the parent's financial status or a change in the needs of the child is a threshold requirement in a modification action") (citation and punctuation omitted). At the time the father filed his petition, the only existing child support order – i.e., the only order subject to modification – was the one incorporated into the final decree and judgment of divorce. And that child support provision

addressed only support for the oldest child. Thus, the only modification requested in the father's petition was a modification of the divorce decree's requirement that he be required to pay child support. Given these facts, the father may only recover under OCGA § 9-6-15 (k) those fees related to a modification of the pre-existing child support award. Put another way, he could recover only those fees that could be attributed to him seeking modification of the requirement that he pay support for the oldest child. See *Boley v. Miera*, 347 Ga. App. 161, 162 (817 SE2d 823) (2018) ("the 'prevailing party' provision in [OCGA § 19-6-15 (k) (5)] is directed solely to the result of the modification action") (citation and punctuation omitted). We cannot tell from the trial court's order, however, if it limited the fees awarded under the statute only to those associated with the downward modification of the father's existing child support obligation. For this additional reason, therefore, we must vacate and remand the attorney fee order.

For the reasons set forth above, we vacate the order awarding the father attorney fees and remand the case for the trial court to reconsider the question of attorney fees and to hold an additional evidentiary hearing, if necessary. Any new order should include findings of fact necessary to support both an award of fees and

the amount of any such award. Additionally, should the order award fees under more than one statute, the court must identify what portion of the award is based on each of the statutes on which it is relying. *Spirnak*, 355 Ga. App. at 870-871 (7) (where a trial court awards attorney fees under more than one statute, it must identify what portion of the award is attributable to each of the statutory provisions at issue).

*Judgment affirmed in Case No. A24A0640. Judgment vacated and case remanded in Case No. A24A0641. Gobeil and Pipkin, J. J., concur.*